NATHANIEL W. LADD vs. CITY OF BOSTON.

Suffolk.　March 14, 1890. — June 20, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Easement — Taking by Eminent Domain — Damages.*

The owners of lots bounding on Pemberton Square in Boston mutually covenanted, among other things, that portions of some of the lots should not be built upon, or not built upon above a certain height; and afterwards the city took such lots for a site for the new court-house. *Held*, that easements of light, air, and prospect were created by the covenant, and that the city was liable in damages for their extinguishment.

PETITION to the Superior Court, which, as amended, alleged that the petitioner is, and was on April 20, 1886, the owner of land with a dwelling on it, being lot numbered 51, formerly belonging to J. P. Thorndike, as shown on a plan* of lots, dated October 6, 1835, situated in Boston, on Pemberton Square, formerly known as Phillips Place, "together with the rights, easements, privileges, and appurtenances more particularly hereinafter set forth in and to lots 39, 40, 41, of division 4, and lots 56, 57, 58, and 59 in division 7, and the six-foot passageway" shown on the plan; that the lot numbered 51 was one of sixty-four lots laid in divisions and shown on the plan; that an indenture of even date with the plan and duly recorded thereafter, and another indenture dated November 7, 1837, also duly recorded, "were made between Patrick T. Jackson, his heirs and assigns, and the owners of the balance of said sixty-four lots, their heirs and assigns, by which it was mutually agreed, in the strongest and most unmistakable terms, that the place, avenues, and passageways as laid out on said plan shall remain forever open and unincumbered as appurtenant to the several lots, to be used for all purposes requisite for the usual full enjoyment of such dwelling and ware houses and their appurtenances as shall be erected thereon, conformably to the provisions therein contained, and that no building shall be erected upon lots comprised in the fourth division within ten

---

* The sketch on the following page embraces the material portion of this plan.

feet from the line thereof on Phillips Place, unless a majority
of the owners shall elect to have swelled or circular fronts, in
which case the swelled or circular portions may extend to any
distance within seven feet of said line; nor shall any building
extend westerly beyond sixty-five feet from said line at a greater
height than ten feet above the level of the six-foot passageway
in the rear of and against the said lots respectively; and the
fact is that said owners, by a majority or otherwise, did not elect
to have swelled or circular fronts; and the indentures aforesaid
further provide that no building shall be erected upon the lots
comprised in division numbered 7 extending easterly beyond the
distance of sixty-six feet from Somerset Street at such a height
that the eaves shall be above the floor of the first or principal
story, excepting upon lot numbered 64.  Provided, however, that
if, at any time thereafter, the owners of the said lots, or a ma-
jority of three fourth parts of them, shall consent to the waiver

or discharge of any or either of the conditions above mentioned, then the same shall cease and determine upon the execution of a sealed instrument declaring such assent, and the recording of the same in the registry of deeds, and the several lots shall thenceforth be held by their respective owners free and released from all the conditions so intended to be released and discharged. And further, that a breach of any of the conditions above specified shall not work a forfeiture of the estate, but shall give to the said Jackson, his heirs or assigns, or the owner of any lot interested in such breach, full power and authority to enter upon the lot with servants and instruments, and take down and remove any building that may have been erected in violation of such condition," and to do all such things, and to do whatever else the owner thereof should have done, at his expense, and without becoming liable to him therefor.

The petition further alleged, that no release of the above mentioned conditions applying to divisions 4 and 7 was ever made by the owners of the lots, their heirs or assigns; that on April 20, 1886, the commissioners for the erection of the new courthouse in Boston duly took lots 39–41 inclusive and lots 56–59 inclusive, and the six-foot passageway, together with the easements and privileges of the petitioner; that the city of Boston was liable for the damages occasioned by said taking, but the street commissioners did not allow, and had never paid, to the petitioner any damages occasioned to the petitioner by such taking; and that all others having any estate or interest in the lots and passageway taken had settled with the city, without having a jury to assess their damages, and had given receipts and quitclaim deeds therefor.

The petition concluded by alleging that the petitioner was " aggrieved that his easements and privileges of light and air, and especially his view into the open area of Pemberton Square, also an easement reserved to him by said indenture, should have been taken away and destroyed, and no compensation allowed him therefor"; and prayed for a jury to assess his damages.

The respondent filed a motion to dismiss the petition, for the reason that " said petition does not set forth or show any taking of any estate, property, or land of the petitioner " for which the respondent city was liable, or for which the petitioner was entitled

to compensation. The Superior Court granted the motion, and dismissed the petition, and ordered judgment for the respondent; and the petitioner appealed to this court.

*I. R. Clark,* for the petitioner.

*T. M. Babson,* for the respondent.

HOLMES, J.   The ground of the motion to dismiss the petition is, that the petition does not show any taking of any estate of the petitioner for which the city of Boston is liable, and that is the only question upon which we pass. It may be that a separate petition ought to have been filed for each estate taken, but upon that we express no opinion at this stage. Neither do we express any opinion on the question of parties, or upon the effect of a previous petition having been filed in respect of some of the same lots, if such be the fact.

It appears that the petitioner's predecessor in title and the then owners of the land taken by the city for the new court-house were parties to an indenture whereby it was covenanted, among other things, that the land in front of the petitioner's lot and just across the street should not be built upon beyond a certain line on what is now Pemberton Square, and should be subject to some other similar negative restrictions. This land the city has taken free of these restrictions. If the plaintiff has an easement, the city must pay for it.

The right to have land not built upon, for the benefit of the light, air, etc. of neighboring land, may be made an easement, within reasonable limits, by deed. *Brooks* v. *Reynolds,* 106 Mass. 31. And such an easement may be created by words of covenant, as well as by words of grant. *Hogan* v. *Barry,* 143 Mass. 538. In order to attach the easement to the dominant estate, it is not necessary that it should be created at the moment when either the dominant or the servient estate is conveyed, if the purport of the deed is to create an easement for the benefit of the dominant estate. *Louisville & Nashville Railroad* v. *Koelle,* 104 Ill. 455. *Wetherell* v. *Brobst,* 23 Iowa, 586, 591. Gale on Easements, (6th. ed.) 59. Of course it does not matter that by the same deed numerous parties grant similar or reciprocal easements over, or in favor of, many parcels of land. *Tobey* v. *Moore,* 130 Mass. 448. *Beals* v. *Case,* 138 Mass. 138, 140. Neither is it material that the indenture provides that a majority

of three fourths of the owners of the lots concerned may terminate the rights which it creates.

If, then, we are to assume that at the time of the indenture the owner of the petitioner's lot was a different person from the owner of the opposite lot taken by the city, we have a plain case of a grant of easements to have certain parts of the latter not built upon, or not built upon above a certain height. Such would seem to have been the fact from the plan, referred to in the petition, which was exhibited to us at the argument, and from the petition itself, which states that the petitioner's right acquired under the indenture was an easement.

It follows, that we need not consider the argument for the city, that owners of purely equitable restrictions are not entitled to maintain a petition of this nature.       *Motion overruled.*