ATLANTIC CITY

*v.*

THE NEW AUDITORIUM PIER COMPANY.

[Filed March 16th, 1904.]

1. Many owners of beach front lands covenanted, under seal, that Atlantic City might locate a boardwalk across their several ownerships at the ocean edge, with aiding covenants against the erection of buildings on its

ocean side in order to secure light, air and view of the ocean from the boardwalk. Possession of the *locus* was given to the city, and the boardwalk was visibly in process of construction, in large size and at great expense, when one of the covenanters conveyed his lot on which the boardwalk had been erected to a grantee, who recorded his deed before the covenant with the city for the way was recorded. This grantee and his assigns accepted and used the boardwalk improvement and its privilege of ocean view secured by the aiding covenants of the deed for several years, but afterwards attempted to erect a building on the ocean side of the boardwalk, which was in breach of those covenants.—*Held*, the open and notorious possession of the way and the construction thereon of a visible and peculiar improvement (the boardwalk) was notice to the grantees who first recorded their deed of the right of the city to the way for a boardwalk, and of the aiding covenant against building oceanward therefrom, and that the erection of buildings in breach of the latter covenant will be enjoined.

2. If the deed to the city failed to pass an estate in the right of way for want of words of grant, it yet operated as a covenant between the signers and the city that each owner would surrender to the city his portion of the way and be bound not to build on the ocean side of the boardwalk, in consideration that the city would erect the boardwalk improvement. When, under such a covenant, possession of the way has been delivered to the city, and it has erected the boardwalk improvement, which has been accepted and used by the signers of the covenant for several years, a grantee of one of the covenantors will be restrained if he attempts to build on the ocean side of the boardwalk, in breach of one of the covenants securing light, air and view from the boardwalk.

3. Such a covenant is also, as between the signers thereof, a general scheme of public improvement, by which each surrenders his portion of the way in consideration of the surrender made by the other signers of their portions, for the benefit of the public and of themselves as owners of land fronting on the right of way. Any owner who so builds on the ocean side of the boardwalk as to shut out the view of the sea therefrom, may be restrained at the suit of any other owner who has contributed land to the common purpose, unless the building erected is a pier within the meaning of the proviso of that covenant.

4. That proviso authorizes an owner to erect but one pier. When that has been done, no lateral additions thereto can afterwards be made.

---

On bill, answer and proofs on final hearing.

The bill of complaint in this cause is filed by the city of Atlantic City to restrain the defendant from erecting a lateral wooden addition to its pier, already built oceanward from the Atlantic City boardwalk. The bill refers to the statutes and ordinances authorizing Atlantic City to reconstruct its board-

walk, and particularly sets forth what it claims was a dedication to public uses of a boardwalk or promenade at the edge of the ocean, running along the front of the city of the width of sixty feet, by a deed dated April 30th, 1896, made and executed by numerous owners of land which the route of the boardwalk crosses (among others by Richard Loper, an antecedent holder of the lands on which the defendant company is about to construct the lateral addition to its pier) ; a copy of this deed of dedication is annexed to the bill of complaint and made part thereof. ·

The defendant's answer with respect to this dedicating covenant is as follows:

"It admits that an agreement, bearing date April 30th, 1896, was executed by certain of the owners of said beach front property, which said agreement was recorded on June 16th, 1896, as in the bill of complaint set forth ; but as to the contents and dates of the execution and acknowledgment of said agreement and of its delivery, or whether the agreement annexed to said bill is a true copy thereof, this defendant is not informed, and leaves the complainant to make such proof thereof as it may be advised."

The defendant denies that by the agreement of April 30th, 1896, the complainant received any dedication of the boardwalk strip, or that by that agreement the complainant received such a dedication that none of the parties executing it can lawfully erect or place on the boardwalk strip itself, or on the ocean side thereof, any buildings or structures except said boardwalk and an iron or steel pier at least one thousand feet in length; and insists that no portion of the land in possession of the defendant company has ever been dedicated; and that none of that land is subject to any covenant or agreement, that no building other than an iron or steel pier one thousand feet in length shall be placed thereon; and denies that it is the complainant's duty, representing the public, to enforce any of the provisions contained in the agreement of April 30th, 1896, against the defendant's land.

The defendant's answer admits that the defendant's title and possession came from Loper (one of the signers of the covenant

of April 30th, 1896) by the chain of title alleged in the complainant's bill; but it denies that the complainant's right in the lands described as the boardwalk strip had vested at the time when Loper conveyed to the defendant's grantor, and insists that before the covenant of April 30th, 1896, made by Loper and others to and with Atlantic City, went into operation, Loper had conveyed the premises in question to the defendant's grantor, and that the said agreement of April 30th, 1896, was of no force or effect, because it was not (as to Loper) delivered and accepted until after the deed to the defendant's grantors (under which the defendant now claims) had been made, and for this reason the defendant claims that its grantors "took said lands free and clear of any covenants or restrictions contained or pretended to be contained in said covenant agreement of April 30th, 1896."

The answer admits that the boardwalk mentioned in the agreement of April 30th, 1896, has been constructed and that it is now in constant use by the public. It denies that at the time of the sale by Loper to its grantors the complainant was in possession of the strip sixty feet in width where the same crosses the premises described in said conveyance, or that it had erected thereon the boardwalk now used. It admits that by named intermediate conveyances the defendant company has come to be the lessee and in possession of the *locus in quo.* It admits that it has driven wooden pilings on those premises, and that it intends to erect buildings thereon, and claims the right so to do, and that the place in which it is driving said wooden pilings is upon lands conveyed to Loper by the State of New Jersey through its riparian commissioners, and claims that said lands are not subject to any of the covenants contained in the agreement of April 30th, 1896. It contends that it has the right to use the property leased by it as it shall see fit. It admits that its auditorium building on its pier has been connected with the boardwalk by a platform which has been in existence for some years. It denies that the erection of its wooden pilings and the construction of a building thereon on the ocean side of the boardwalk are any violation of any of the covenants mentioned

in the agreement of April 30th, 1896, or a violation of any general scheme of the holders of beach front land for the improvement of the ocean front, and denies the right of the public to interfere with the use of its premises in any manner it sees fit.

The answer further insists that it was the intention that the agreement of April 30th, 1896, should be considered as incomplete and of no force until the signatures of all the owners of the beach front property had been obtained, and charges that a large number of the beach front owners have refused to execute it, and that for that reason it cannot be enforced as a general scheme of the owners; and it further insists that under the terms of that agreement and the clause therein contained regarding the construction of piers the complainant, Atlantic City, has no right to determine the size or proportions of any pier, or whether or not, when a pier is once constructed, the same may be widened by lateral additions to the sides thereof; and the defendant insists that it has the right to determine, at its discretion, the size and proportions of such pier as it may choose to erect on its lands lying oceanward of the boardwalk.

Issue was joined on this answer and the cause came to final hearing.

*Mr. Harry Woolton* and *Mr. Burrows C. Godfrey.* for the complainant.

*Mr. Charles D. Thompson,* for the defendant.

GREY, V. C.

The defendant company claims that the grant or covenant of Loper (the defendant's remote grantor) to Atlantic City, dated April 30th, 1896, called the boardwalk deed, did not convey any interest in lands to Atlantic City, first, because the operative words of that covenant will not pass an estate and at the most grant a mere revocable license, which was revoked by Loper's deed to the defendant's grantor; that the original instrument is not produced in evidence; that the record thereof is not admissible

and that no sufficient secondary proof of its contents has been offered.

The defendant also insists that if the boardwalk deed did pass any estate or right of possession from Loper, such estate or right is ineffective as against the defendant company for the following reasons:

1. That the boardwark deed did not go into operation until it was accepted by the city's ordinance, which was not passed until June 8th, 1896, a date subsequent to the making of the two deeds from Loper to the Riddle company, &c., which were made on June 6th, 1896.

2. That if the boardwalk deed operated on the day of its date, April 30th, 1896, or on the day of its execution by Loper, on or before May 9th, 1896, it was still subsequent and subject to Loper's equitable agreement to convey made with William Riddle on May 4th, 1896.

3. That the boardwalk deed was not actually executed and delivered by Loper and certainly not recorded until after his two conveyances of June 6th, 1896, to the Riddle company, &c., under whom the defendant claims.

4. That the boardwalk deed is no part of a general scheme, at least as to Loper, because it is not shown that he attended at and participated in any meeting of the beach front owners to form and perfect such a general plan.

5. That if that deed is the result of a general scheme of improvement, it became operative only when every owner from one end of the boardwalk to the other had signed it, and that the refusal of any owner to sign postponed or defeated the scheme.

The defendant also claims that if it should be determined that the *locus in quo* is subject to the restrictions of the boardwalk deed, the defendant still has the right to construct a steel pier; that the restrictions in that deed cannot limit the size or proportions of such a pier, or prohibit the widening of a pier when once constructed by making lateral additions to the same.

Almost every point which is raised at this final hearing was presented and elaborately argued on the motion in this cause for a preliminary injunction. An opinion disposing of many

19

of these questions will be found reported in *63 N. J. Eq.* (*18 Dick.*) *644*. The whole case at this final hearing turns in great part upon the same documentary proofs which were submitted and passed upon on the former hearing. The defendant, on this hearing, called but one witness, Mr. Loper. The opinion given on the first hearing is illustrated by a diagram showing the *locus in quo*, which may be found in the report of the case. I do not deem it necessary to repeat *in extenso* the views then expressed and will refer to that opinion as my comment when the same claims are here again set up by the defendant company, shortly discussing now the new points raised at this final hearing.

First as to the objection that the boardwalk deed passed no estate and at most is but a revocable license. That deed certainly amounts to a covenant with the grantee and impliedly with all of the co-grantors and makers of similar deeds to Atlantic City, that the city should have the possession and use of an easement of way at the ocean edge, running continuously and successively across the lands of each grantor, for the purpose of erecting thereon a new steel boardwalk, to be used as a promenade by the public and the co-grantors in such deeds, which easement of way had attending thereon the aiding covenant that no buildings (save as specified in that deed) should be erected to the ocean-ward of the granted right of way, in order that the users of the boardwalk might have an uninterrupted ocean view and the enjoyment of the unimpeded breezes from the sea.

If the boardwalk covenant should be held to be a mere license, the overwhelming evidence is that it was fully executed before the making of the deeds of June 6th, 1896, to the defendant grantor. The steel boardwalk, a most expensive improvement, of great magnitude and of the most visible and notorious character, was in process of construction in the early part of May, 1896. The defendant and its antecedent grantors have for years accepted the benefit of these improvements and are now enjoying them. Other co-grantors in great number have done likewise. The *status quo* cannot be restored, and the defendants do not offer to restore it.

An inspection of the boardwalk covenant itself, and the aiding proof given in the cause touching the subject-matter with which it dealt, show that the privilege granted is much more than a mere license, even if judged by the most severe standard. The grantors were many in number, each granted for himself that portion of his lot which the boardwalk strip crossed at the ocean front. Each grantor who surrendered his portion received as his consideration the benefit to his lot which came from the coincident surrenders of the other grantors, and the assurance appearing on the deed itself that the city could and would condemn the necessary lands of those who might refuse to grant, and that it would build the necessary boardwalk for the benefit of all the grantors and the public on the strip granted. This much more nearly resembles a covenant that an easement shall be enjoyed for which a valuable consideration has passed than it resembles a mere license. When accompanied, as in this case, by delivery of actual possession and the making of great improvements in accordance with the scheme which the defendant's grantors have for years enjoyed, it is irrevocable.

This deed passes a present right to a continuous way. It contained no agreement that its operation shall be postponed until all of the owners of beach fronts shall join in it. There is no evidence that there ever was any agreement that its operation should be postponed. There was no occasion for such a postponement, for the deed itself shows that each owner knew that the city might by condemnation enforce the right of way against all owners who did not join in giving it. The proven fact is that the new boardwalk, as fast as built, took the place of the old one. The owners, including Loper, permitted the new structure to be continuously erected across their lands, some before and some after their making of the boardwalk deed to the city. A few only have never as yet signed that deed, but the new boardwalk has been continuously constructed for several miles, of which the Loper property (now possessed by the defendant company) is about the centre.

The position of the city, thus put into actual possession of the easement of way by the grantors named in the covenant,

even if it received no estate in the lands of the boardwalk deed, was (when Loper signed the deed, on May 9th, 1896) that of a covenantee for an easement of way who has been put in actual possession of the land over which the way passed, and has made important, substantial and permanent improvements upon it, according to the terms of the covenant. This was the situation which existed for several weeks before Mr. Loper made the two deeds on June 6th, 1896, to Riddle & Company, &c., the defendant company's grantor.

A short *résumé* of the evidence on this point may throw some light on the situation of the *locus in quo* at and before the time of the making of the deed by Loper to the defendant's grantor.

The work on the new steel boardwalk began on April 20th, 1896, and continued until it was completed, in July, of that year.

The character of the structure was so prominent from its first beginning—in steel columns and girders to carry a plank walk forty feet wide—that anyone who approached it was necessarily notified that the parties erecting it were asserting a permanent right of occupation. The structure was also built at the ocean's edge and was plainly a continuous boardwalk, intended for promenaders, who might, in passing to and fro upon it, enjoy the ocean view and breezes. This was erected across the property of Loper between the 20th of April and the 6th day of May, 1896. At that time Loper, the defendant's grantor, owned not only the title to the land across which the steel boardwalk was being constructed at the ocean end of Pennsylvania avenue, but also the State of New Jersey's riparian title to the lands below high-water mark, which had been conveyed to him by deed of August 29th, 1895, and which included the exact *locus in quo* the defendant company is about to erect its lateral addition to its pier. The Loper deed, which passed the riparian title, including the *locus,* to the defendant's grantor, is the second deed made by Loper to the Riddle company of the date of June 6th, 1896, and is marked *Exhibit D 3* in this cause. It is recorded June 10th, 1896, in Book 203 of Deeds, page 383.

Mr. Loper's testimony in this cause, I think, clearly shows

that he knew, when he made the boardwalk deed to the city, that the new steel boardwalk was then being gradually substituted for the old boardwalk across his lands at the ocean end of Pennsylvania avenue. Both structures were in full view at the same time from his property. He was at this time the owner, both of the land at the ocean edge, across which the new boardwalk was being constructed, and he was also the owner of the land which the state had conveyed to him lying below high-water mark, which has since, by intermediate conveyances, come into the possession of the defendant, and on which it is presently erecting the structure to which the complainant (Atlantic City) objects. Mr. Loper's deed to the city, even if considered to be solely a covenant for a right of way with the aiding covenant against building to the oceanward of the way, affected not only the boardwalk strip, with the easement of way, but also those lands of Mr. Loper lying oceanward of the boardwalk strip below high-water mark. These lands of Loper became bound by the aiding covenants against building to the oceanward of the boardwalk right of way.

Any grantee from Loper, between the dates of April 20th, 1896, and June of that year, of either the lands lying at the ocean end of Pennsylvania avenue across which the boardwalk ran or the lands in front of them below high-water mark, took his title with actual notice of the boardwalk easement along the ocean front, and certainly was put upon warning of its attendant and protective covenants against buildings to be erected on the oceanward side of the boardwalk.

The boardwalk itself was then in full view; it was plainly a continuous footway along the ocean, not only on Loper's property, but also on the property of all of the beach front owners; and just as plainly the main purpose and object of that way was manifest to every onlooker, namely, the enjoyment from the boardwalk of a view of the sea uninterrupted by buildings or other structures on the oceanward side of the boardwalk. This was its only and obvious use.

The landward side of the boardwalk was closely built up along its entire length. The oceanward side of it had at that

time (1896) no buildings except Young's pier and the Iron pier. Those two were the only buildings standing oceanward of the boardwalk in 1896. This fact would of itself put anyone interested upon inquiry to ascertain why so remarkable a situation should exist. During the whole period from April 20th to June, 1896, the construction of the new steel boardwalk was openly going on under the direction of Atlantic City workmen and superintendence. The slightest inquiry of anyone in charge of that work would at once have disclosed the grant or covenant, as it may be, of the boardwalk continuous right of way at the ocean edge, and its aiding covenants for sea view and sea breeze unobstructed by buildings on the oceanward side.

While the new steel boardwalk was in process of construction the old boardwalk was permitted to stand until the new work supplanted it, the old walk being removed in parcels as the new walk took its place. This was another notorious and remarkable fact which would at once draw attention to the whole scheme and indicate to an onlooker the purpose of the improvement.

As Loper's deed to the Riddle company, &c. (under which the defendant claims), was not made until June 6th, 1896, his grantees under that deed and those claiming under them were unquestionably warned of the city's possession and put upon inquiry as to the extent and character of its claim.

The contention that the original boardwalk agreement is not produced, that the record is not admissible, and that accurate secondary proof of the contents of that deed has not been made, is met by the admissions of the third paragraph of the defendant's answer that "an agreement, bearing date April 30th, 1896, was executed by certain beach front owners and recorded as in the bill of complaint set forth," leaving the complainant to prove the date, contents and delivery of that agreement. The complainant has, in my judgment, sufficiently proved the loss of the original Loper boardwalk deed, and by secondary evidence has shown its date, contents and delivery. Loper himself, though brought into court to throw doubt on his boardwalk deed to the city, by questioning the date of its acknowledgment by him, practically admits that he did make that deed. "I have a distinct

recollection," he says, "of Judge Endicott, and I think—I believe it was Judge Thompson—calling at my office in Philadelphia, 713 Chestnut street, for me to sign that which turned out to be the easement deed, and I so understood it." He admitted that the instrument he signed was a printed form of deed. This corresponds with the complainant's proofs.

There were so many owners of beach front lands, and so many covenants to be prepared, that the boardwalk deed was printed on a special form with blanks for the names of the owners. Dozens of them were executed. In some deeds many owners joined in executing the printed form. Others were executed by a single owner. A copy of Mr. Richard F. Loper's deed is annexed to the bill of complaint. It will be seen on examination that many other owners joined with him. The description is of the right of way. Each grantor covenants that the city may have the whole easement and the effect is that each gives the portion of his lot which it covers.

The original deed which Mr. Loper signed having been lost, the defendant's counsel insists that the record of it is not admissible in evidence, because he contends the deed is not such a conveyance as the statute enables to be recorded. Mr. Loper, when the copy was exhibited to him, attempted to throw doubt upon it, but his testimony, when properly considered, shows that he did in fact execute the covenant on one of the printed forms, which are all alike.

The defendant's counsel, in the effort to exclude proof of Mr. Loper's deed to the city, has also called attention to slight variances in some of the boardwalk deeds, none of which affect those portions of it which are here under consideration, nor do they throw serious doubt upon the correctness of that copy of Mr. Loper's deed which is here produced.

Mr. Loper's testimony was not impressive in either its matter or in the manner of its delivery. Nothing in it led me to doubt that Mr. Loper had actually signed and acknowledged the boardwalk easement deed on or before May 9th, 1896, as Judge Endicott (who took his acknowledgment) testified Mr. Loper had done, or that the copy produced is in fact a copy of that deed.

In my judgment, even if it be conceded that the boardwalk deeds did not convey a legal estate, and that for this reason they were not recordable under the statute or provable by the record, yet it has been proven in this case that Mr. Loper did, in fact, execute the deed, copy whereof is annexed to the bill of complaint; its loss has been shown and secondary proof of its contents has been made. The right which passed by such a covenant when accompanied by the giving of possession of the premises affected by it, and the expenditure of money upon it in permanent and extensive improvements in accordance with the covenant, is not revocable by the operation of a deed subsequently made to a grantee who takes it with full notice before he took his deed of the possession and improvements of the covenantee. That, in my view, was the *status* of the Riddle company and Brady under their deeds of June 6th, 1896, in view of the actual condition of the *locus in quo* at that time. Brady himself signed the deed conveying the boardwalk to the city.

I am of the opinion, therefore, that Mr. Loper's boardwalk deed to the city has been sufficiently proved; that the defendant company's grantor had notice and warning of it and took their deeds subject to the city's right of way in the boardwalk and the attending protecting covenants against building to the oceanward thereof.

As to the other contentions of the defendant that the deed did not go into operation until it was accepted by the city's ordinance, no additional proofs have been offered on final hearing and the matter is fully disposed of by the eighth syllabus (*18 Dick. 645*), to which I refer.

The defendant's claim that the city is bound by the preliminary equitable agreement for conveyance made between Loper and Riddle on May 4th, 1896, is not supported by any proof whatever that either the city or anyone acting for it had any notice of this private agreement.

Both the city and the co-grantors of Loper were in the position of *bona fide* purchasers without notice of this private and hidden agreement. The city was already in good faith constructing its boardwalk. The co-grantors of Loper gave their land. Neither

of them ever heard of this private contract between Loper, on the one part, and the Riddle company and Joseph Brady, on the other. The claim set up under it is therefore inadmissible.

The contention that the boardwalk deed was not actually executed and delivered by Loper until after the conveyances of June 6th, 1896, to the Riddle company, &c., is also fully met in the previous opinion and decided therein.

The city's deed was, it is true, not recorded until after Loper's two deeds to the Riddle company, &c., were recorded. This accident is probably the temptation which led the defendant company to claim that it and the Riddle company and Brady (the grantees from Loper who recorded their deeds precedently to that of the city) are free from the restrictive operation of the city's boardwalk covenants. If they are, they may build to the oceanward of the boardwalk at their choice, as by their answer in this cause they assert they have a right to do; they can thus, to their own great profit, practically destroy the essential character of the boardwalk, which absolutely requires, as an incident to its enjoyment, a free view of the sea. I hold, as above stated, that, although the city's deed from Loper, Brady and others was recorded after the recording of Loper's deed to the Riddle company and Brady, yet the Riddle company and Brady had full notice and warning of the city's rights when they accepted their two deeds from Loper.

The contention that the boardwalk has not been shown to be part of a general scheme, or that it is not binding upon Mr. Loper and his grantees for want of proof of a general conference and agreement between the grantors, in which Mr. Loper participated, is also of no avail in this case. The expressed terms of the boardwalk deeds and the many signers thereof show that there was a common purpose to which all the grantors contributed their portions for the benefit of the public in general and of themselves as owners, at the ocean's edge, in particular.

These documentary proofs sufficiently show a general scheme, and with Mr. Loper's own testimony in this case they indicate that he was a participant in, and sharer of, its benefits, whether

he actually attended the conference or meeting for that purpose or not.

So, also, the claim that the general scheme became operative only when every owner from one end to the other of the boardwalk had signed the boardwalk deed, and that the failure of any one owner to sign defeated the operation of the scheme, is unsupported by any proof that there was any such agreement. The action of Mr. Loper and the other beach front owners in delivering their deeds, and in permitting actual possession to be taken under them without waiting to see whether every other beach front owner also signed, is a clear indication that there never was any purpose or agreement that these boardwalk deeds and the easements thereby given should become operative only when every beach front owner had signed.

There was no need of any agreement that the boardwalk covenant should not go into operation until all beach front owners had signed it. The covenant contained recitals showing that the right of way over the lands of all who did sign it might be obtained by condemnation.

These rulings leave as the only question to be considered the defendant's claim that notwithstanding the restrictions in the deed, it still has the right to construct a steel pier, and that those restrictions cannot limit the size or proportions of the pier or prohibit the widening of it by making lateral additions thereto after it has once been completely constructed.

The defendant's Auditorium pier was built about a year after the then owners of the land on which it is located had joined with the other beach front owners in making the boardwalk easement deed or covenant. They had completed their pier before they began the improvement which is now challenged. The answer admits that it is a "lateral addition" to an existing pier, and does not claim that it is work about to be done to complete an unfinished one. The boardwalk covenant limits the right of each owner to the erection of one pier of certain length and character of material. The natural situation requires that such a pier should run out into the ocean. If it does not, and should be located parallel with the boardwalk, it

would not be a pier. When the one pier is finished, the owner cannot be held to have the right to make unlimited lateral additions to it—*first,* because the restrictions prohibit the erection of all buildings oceanward of the boardwalk except the one pier, and when that one pier has been erected by any owner he has exhausted his reserved right; *secondly,* the whole scheme is based upon the preservation of sea view and access of ocean breezes from the boardwalk. If each owner may make, at his choice, lateral additions to his one pier, the boardwalk will soon be entirely cut off from both ocean view and breezes by sidewise extensions of the piers (parallel to the boardwalk), and it will be nothing but an enclosed promenade. Again, it is admitted that the proposed lateral addition to the defendant's pier is being constructed of wooden piling. This is directly in breach of the express requirements of the boardwalk covenant that the pier to be built by an owner shall be made of steel or iron. This is a matter of substance, in view of the dangers from fire at the ocean front, where the wind has so clear a sweep that the use there of non-combustible materials is the only safe plan of construction. A discussion of the effect of the restrictions touching the piers may be found in the former opinion in this case (*18 Dick. 672, 673*).

The complainant bases its claim of right to restrain the defendant's further construction of the lateral addition to its pier, in part, on the effect of the deed of Charles Evans to Atlantic City, dated January 22d, 1890, granting to the city a right of way for a boardwalk, and attempting to restrain the erection of building oceanward of the boardwalk. At the time Evans made that deed he did not own the lands lying below high-water mark, where the defendant is proceeding to build. Evans' attempted restriction was inoperative upon the lands lying below high-water mark. This phase of the case is more fully discussed and cases cited on page 662 of the former opinion, to which I refer.

The boardwalk easement is not dependent for its integrity upon Evans' deed of 1890, though Evans did not own the lands below high-water mark when he made it in 1890. Loper did

own those lands when he joined in the boardwalk covenant in 1896, having, as above stated, acquired them by grant from the state by deed of August 29th, 1895.

In my view, the defendant should be restrained from the erection of the lateral addition to the pier which it proposes to build.