BOYDEN and others, Appellants, vs. ROBERTS and others, Respondents.

*February 19—May 21, 1907.*

*Agreement restricting use of land: Equitable servitude: Enforcement by subsequent purchasers inter sese: Notice: "Conveyance" entitled to record: Violation of agreement: Maintenance of clubhouse, etc.*

1. Where an instrument restricting use was executed in pursuance of a general scheme for the purpose of preserving the character of real estate as first-class residence property "by present owners and future purchasers of the same," the restriction created an equitable servitude.

2. Such a restriction must be regarded as of value to the whole property and inserted for the benefit of those who become owners of separate parcels, and is binding in equity on a grantee of a portion of the premises with notice.

3. Where a covenant in the form of a restriction is appurtenant to the land, the right to enforce it in equity passes with the land.

4. The doctrine of equitable servitude is one largely of intention to be deduced from the agreement.

5. The controlling question in determining whether an equitable servitude exists is whether the original parties so intended.

6. The form of an agreement used to create a restriction in the nature of an equitable servitude is not material. Words of covenant are as effectual as words of grant.

7. The owner of a tract of land with lake frontage, at the time of conveying a portion thereof and as part of the same transaction, made an agreement with the grantee that the character of the whole tract as first-class residence property should be preserved by them and by future purchasers, and that no part thereof should at any time be occupied, sold, or used by either of them or their heirs, executors, or assigns for hotel, club, or camping purposes, or for any reformatory, charitable, or penal institution. The agreement provided that it should be binding upon the respective heirs, executors, administrators, and assigns of the parties thereto and should constitute a covenant running with the land. The deed made no reference to the agreement. *Held*, that the instruments, construed together, impressed upon the whole tract and upon every part thereof an equitable servitude for the benefit of all purchasers and binding upon all purchasers having notice thereof, and that the specified restrictions upon the use of the property could be enforced by

subsequent purchasers of parcels of the portion originally re-
tained by the owner against other such purchasers chargeable
with notice of the agreement, although all claimed under mesne
conveyances from such owner containing no restriction and no
reference to the agreement.

8. The restriction being for the benefit of all portions of the prop-
erty, each purchaser took his portion with the right to enforce
the restriction against other grantees of portions of the prop-
erty with notice.

9. No reference to the agreement in deeds of portions of the prem-
ises was necessary in order to enable grantees with' notice to
enforce the restriction *inter sese.*

10. Said agreement being an instrument "by which the title to any
real estate may be affected in law or equity," was a "convey-
ance" as defined in sec. 2242, Stats. (1898), and the record
thereof was constructive notice to all subsequent purchasers.

11. The maintenance on said tract of a neighborhood clubhouse for
social purposes in connection with golf grounds, and of a pier
and boat landing for the accommodation of members and their
families and guests, would constitute a violation of said agree-
ment.

[Syllabus by KERWIN, J.]

WINSLOW and DODGE, JJ., dissent.

APPEAL from a judgment of the circuit court for Walworth
county: E. B. BELDEN, Circuit Judge. *Affirmed.*

This action was brought to quiet title to certain land owned
by the plaintiff *Edward G. Uihlein* against claim of defend-
ants that a restriction existed limiting the use, created by a
certain agreement hereafter designated as the Johnston-Weiss
agreement. The defendants answered, among other defenses,
by way of counterclaim, setting up the agreement and de-
manding affirmative relief against the violation thereof by the
plaintiffs. The plaintiffs replied to the counterclaim, and the
case was submitted to the court upon the pleadings, stipulation
of parties, and depositions of John Johnston, Jr., and George
A. Weiss. The facts established by the admission of parties
and the findings are substantially as follows:

On May 1, 1891, one John Johnston, Jr., became the
owner of about 106 acres, known as Forest Glen, situate on
the north shore of Geneva Lake in Walworth county, Wiscon-

sin, and having a shore line of about 2,000 feet, which tract included all the lands referred to in the pleadings herein and owned by any of the parties to this action. On October 20, 1892, Johnston sold and conveyed 13.41 acres of said land, being about 700 feet of the shore, to George A. Weiss, and as a part of said transaction Johnston and Weiss entered into the following agreement:

"This agreement, made and entered into the 20th day of October, 1892, by and between John Johnston, Jr., of the city of Chicago, county of Cook, and state of Illinois, of the first part, and George A. Weiss, of the same place, of the second part, witnesseth: Whereas, said John Johnston, Jr., is the owner of certain real estate situated in section eleven (11), township one (1) north, of range sixteen (16) east, in the county of Walworth and state of Wisconsin, said property being otherwise known as Forest Glen, and being more particularly described in a deed executed by Joel C. Rockwell to said John Johnston, Jr., under date of May 1, 1891, and which deed is recorded in the recorder's office of said county, in volume eighty-one (81) of Deeds, page 590; and whereas, said Johnston has sold a portion of said property to said Weiss and is about to convey the same to him by deed bearing this date; and whereas, it has heretofore been and is now agreed and understood between said parties that the character of all of said property known as Forest Glen as first-class residence property shall be preserved by the present owners and future purchasers of the same: Therefore, and in consideration of one dollar ($1) by each of said parties paid to the other, the receipt whereof is hereby acknowledged, it is hereby covenanted and agreed between said parties for themselves and their respective heirs, executors, administrators, and assigns, that no part or portion of said Forest Glen property hereinbefore mentioned shall at any time be occupied, sold, or used by them, or either of them, or by either of their heirs, executors, administrators, or assigns, for hotel, club, or camping purposes or for any reformatory, charitable, or penal institution. This agreement shall be binding upon the respective heirs, executors, administrators, and assigns of the parties hereto, and shall constitute a covenant running with the land."

Both the deed from Johnston to Weiss and the agreement were duly signed, sealed, witnessed, and acknowledged so as to be entitled to record, and were filed for record in the office of the register of deeds of Walworth county, Wisconsin, on the 7th day of November, 1892, and duly recorded. The land referred to in the agreement of October 20, 1892, as about to be conveyed by said Johnston to Weiss was the identical land described in the deed of same date from Johnston to Weiss, but such deed contained no reference to the Johnston-Weiss agreement. At the time of the execution of said agreement Geneva Lake was an attractive and much frequented summer resort, and property situate upon its shore was greatly sought after for summer residences. After recording said deed and agreement Weiss erected upon the property conveyed to him an expensive summer residence and thereafter occupied it during the summer months until sold in September, 1899, to plaintiff *Uihlein;* and in said deed conveying the premises was inserted the following:

"Subject also to an agreement regarding the use of said property entered between John Johnston, Jr., and said George A. Weiss on the 20th day of October, 1892, and recorded in the office of the register of deeds for Walworth county, state of Wisconsin, in volume 65 of Mortgages, on page 435."

Defendants *John Roberts, Jeremiah J. Mogg,* and *Millard E. Mogg* are each owners of separate parcels of land situate on the north shore of Geneva Lake, and formerly constituting parts of Forest Glen, title to which each of them acquired through mesne conveyances from Johnston subsequent to the execution and recording of said Johnston-Weiss agreement, but none of said conveyances contained any reference to said agreement. At the time of their purchases, respectively, each of said defendants was furnished with an abstract of title to the premises and upon each abstract was shown said agreement. Said abstracts were examined and title accepted with full knowledge of said agreement and believing it to be in

force and valid. Said *Roberts* and *Millard E. Mogg* had per-
sonal knowledge of said agreement at the time of their re-
spective purchases, and *Jeremiah J. Mogg* was informed
thereof immediately after the purchase, and each of said de-
fendants accepted the same in good faith as binding and re-
garded it as enhancing the value of such property. Since pur-
chasing, defendants have severally improved the premises at
large expense by the erection of summer residences. On Octo-
ber 26, 1903, plaintiff *Uihlein* purchased through mesne con-
veyances from Johnston all that remained of Forest Glen
property, which he thereupon subdivided into lots and caused
a plat thereof to be recorded. Said purchase and platting were
subsequent to the purchase and improvements made by de-
fendants. Upon lot 1 in said subdivision plaintiff *Uihlein*
and the other plaintiffs have laid out golf links, and upon lot 3
they are proposing to erect a clubhouse, locker house, and pier
or boat landing, all to be used for club purposes. Title to both
of said lots 1 and 3 is in *Uihlein* individually. Other lots in
*Uihlein* subdivision have been conveyed to plaintiffs *Sarah W.
Boyden, Edgar G. Stearns, John H. Dawson,* and *Herbert G.
Brinsley,* and none of them had his attention called to said
agreement. In deed to *Uihlein* of Johnston, Jr., tract no refer-
ence was made to the agreement, nor in the deeds from *Uihlein*
to his coplaintiffs; and when making said purchases *Uihlein*
had forgotten, if he had ever known, that said agreement in
terms included the land so purchased. It is the intention of
plaintiffs to erect and maintain the proposed clubhouse on lot
3 as a neighborhood and social clubhouse, to be used in con-
nection with the golf grounds and for other social purposes. It
is not intended to limit the membership of the proposed club
for whose use the clubhouse is to be erected. The pier pro-
posed to be erected in front of lot 3 is to be for the accommo-
dation of members, their families and guests. It is expected
that during the summer season both public and private boats
will call frequently at the proposed pier for the purpose of re-

ceiving and discharging passengers; that said clubhouse and grounds will be in use for playing golf and other social diversions on all days of the week, including Sundays; that boats calling at said landing will announce their approach by whistle; that private boats bringing members or guests will frequently tie up at said landing while the passengers are engaged in play; and that such coming and going and lying to of steamboats will cause more 'or less noise, disturbance, and the emission of smoke in the vicinity; and that such proposed use of the premises, or other use thereof for club purposes, is objectionable to defendants and is regarded by them as distracting and interfering with the privacy of their homes and the quiet, seclusion, and rest which they sought in purchasing and building the same.

The conclusions of law by the trial court were in substance as follows: The Johnston-Weiss agreement did create a valid and binding restriction upon the use thereafter of all said premises known as Forest Glen. Said restriction created by said agreement constituted and became a covenant running with the land and binding upon the parties thereto. The record of said agreement was notice thereof, and of said restriction therein contained, to all subsequent purchasers of said Forest Glen tract and binding upon them. The proposed use of lot 3 in said *Uihlein* subdivision for club purposes is within the terms of said restriction, and if carried into effect would constitute a violation thereof. The plaintiffs severally purchased their respective holdings of land with notice of, and hence subject to, said restriction. Defendants, as grantees or assigns of said Johnston, Jr., are entitled to the benefits of said restriction. Defendants' are entitled to judgment dismissing the complaint and enjoining the plaintiffs from erecting, maintaining, or operating the proposed clubhouse or any hotel or other building or institution prohibited by said agreement.

Judgment was entered dismissing the complaint, and re-

straining plaintiffs as prayed in the counterclaim, from which plaintiffs appealed to this court, and assign the following errors: (1) In adjudging that the defendants are entitled to the benefit of the restrictions in the Johnston-Weiss agreement and have the right to enforce them against plaintiffs. (2) In finding that express reference to the Johnston-Weiss agreement in the conveyance from Weiss to *Uihlein* of the Weiss tract rendered the restriction therein contained binding upon *Uihlein* in his subsequent purchase of a part of the Johnston tract. (3) In finding that the Johnston-Weiss agreement was an instrument entitled to record within the recording acts; and that the record thereof rendered the contents of such agreement notice to subsequent purchasers and binding upon them. (4) In construing the Johnston-Weiss agreement to include within its restrictions the neighborhood or social club-house planned by plaintiffs.

*Jay F. Lyon,* for the appellants, contended, *inter alia,* that, in order to enable subsequent grantees from a common grantor to enforce a restriction *inter sese,* such restriction must have entered into and formed a part of the conveyance to them from such grantor; and that it is not sufficient that the land in the hands of the common grantor is subject to a restriction imposed thereon in pursuance of a general plan or scheme. *De Gray v. Monmouth Beach C. H. Co.* 50 N. J. Eq. 329, 335, 24 Atl. 388; *Trout v. Lucas,* 54 N. J. Eq. 361, 35 Atl. 153; *Clark v. McGee,* 159 Ill. 518, 42 N. E. 965; *Sharp v. Ropes,* 110 Mass. 381; *Beals v. Case,* 138 Mass. 138; *Hemsley v. Marlborough H. Co.* 62 N. J. Eq. 164, 50 Atl. 14; *Jeffries v. Jeffries,* 117 Mass. 188 (second case); *Parker v. Nightingale,* 6 Allen, 341; *Mulligan v. Jordan,* 50 N. J. Eq. 363, 24 Atl. 543; *Jewell v. Lee,* 14 Allen, 145; *Keates v. Lyon,* L. R. 4 Ch. App. 218; *Graham v. Hite,* 93 Ky. 474, 20 S. W. 206; *Haines v. Finwachter* (N. J. Eq.) 55 Atl. 38; *Summers v. Beeler,* 90 Md. 474, 78 Am. St. Rep. 446; *King v. Dickeson,* L. R. 40 Ch. Div. 596, 58 L. J. Ch. 464, 60 L. T. 785, 37

W. R. 553; *Lewis v. Ely,* 100 App. Div. 252, 92 N. Y. Supp. 705.

For the respondents there was a brief by *Franklin J. Tyrrell* and *Simmons, Nelson & Walker,* and oral argument by *John B. Simmons.*

The following opinion was filed March 19, 1907:

KERWIN, J. The important question presented for consideration under the assignments of error is the effect which should be given to the Johnston-Weiss agreement set out in the statement of facts as regards the property described therein. The deed to Weiss and the Johnston-Weiss contract were executed contemporaneously as parts of one transaction, and hence upon familiar principles must be read together as one instrument. *Blakeslee v. Rossman,* 43 Wis. 116; *Gillmann v. Henry,* 53 Wis. 465, 10 N. W. 692; *Stapleton v. Brannan,* 102 Wis. 26, 78 N. W. 181; *Security T. & L. Ins. Co. v. Ellsworth,* 129 Wis. 349, 109 N. W. 125. Both instruments were executed in pursuance of a general scheme, as set forth in the agreement, for the purpose of preserving the character of the Forest Glen property as first-class residence property "by the present owners and future purchasers of the same." The agreement expressly prohibiting the use of the property for other purposes named therein clearly refers to all property described, as well that retained by Johnston as that conveyed to Weiss. The deed and agreement were recorded in the office of the register of deeds of the proper county. It seems manifest from the express terms of the agreement, to the effect that it should be binding on all purchasers of any portion of the property and upon the heirs, executors, administrators, and assigns of each party, and that the covenant should run with the land, that the parties intended to impress the property with an equitable servitude in the nature of a restriction. This restriction obviously was re-

garded of value to the whole property and inserted for the benefit of those who might become owners of separate parcels and for their mutual protection. No reason is perceived why such a restriction should not be as binding in equity upon any grantee of a portion of the premises with notice as if inserted in a deed to him. Clearly the restriction was impressed upon all the property, and upon the transfer of any portion it passed to the grantee burdened with the restriction. It is apparent from the established facts that the agreement was executed in pursuance of a general scheme for the benefit and improvement of the property and not for the benefit of the grantor alone, and that each purchaser with notice took the portion conveyed with the right to enforce the restriction against other grantees of portions of the property charged with the restriction. 2 Pom. Eq. Jur. (3d ed.) § 689; 4 id. § 1342; 3 id. § 1295. The very object of the restriction was to enhance the value of the property by making it desirable for residence property, and such enhanced value was obviously intended to be secured by imposing upon all the property a servitude in the nature of a restriction which could be enforced by the grantees *inter sese*.

It is insisted, however, by appellants that the restriction cannot be enforced because not inserted in the deeds to either defendants or plaintiffs; that there was no agreement that the restriction should be inserted in the deed from Johnston of the Johnston tract; that there is no evidence that subsequent purchasers of the Johnston tract should have the benefit of the covenant against each other; and that there is no evidence that the covenant was part of the subject matter of the purchase by any defendant. The agreement itself meets all these objections. It was designed by its terms to be a general plan or scheme for the enhancement of the value of the property by the protection of all purchasers of any portion of the property from the use of any other portion otherwise than for

first-class residence property. It was by the terms of the agreement made a covenant running with the land, for the manifest purpose of securing its observance by the owner of any portion as against the owner of any other portion. This right by each grantee was a valuable right, and was therefore a part of the subject matter of the purchase. So the covenant in the form of a restriction being appurtenant to the land and every parcel of it, the right to enforce it at least in equity by any grantee against any other grantee passed with the land. The whole tract of land being by the Johnston-Weiss agreement impressed with an equitable servitude for the benefit of all purchasers under the scheme that the property should be preserved for first-class residence property, and other uses named prohibited, each grantee is entitled to enforce such restriction in equity. 2 Pom. Eq. Jur. (3d ed.) § 689; 1 Jones, Real Prop. in Conv. § 780. Where the general plan or scheme of an agreement restricts property to a certain use and prohibits other uses, it is immaterial whether the covenant runs with the land or not, where the agreement is made for the mutual benefit of all the land though held by different owners. In such case equity will enforce such servitude as between the several grantees of parts of the premises with notice. 1 Jones, Real Prop. in Conv. §§ 780, 781, 782; *Austerberry v. Oldham*, L. R. 29 Ch. Div. 750; *Jeffries v. Jeffries*, 117 Mass. 184, 188; *De Gray v. Monmouth Beach C. H. Co.* 50 N. J. Eq. 329, 24 Atl. 388; *Coles v. Sims*, 5 De Gex, M. & G. 1; *Nottingham P., B. & T. Co. v. Butler*, L. R. 15 Q. B. Div. 261; *Winfield v. Henning*, 21 N. J. Eq. 188. Most of the cases cited by counsel for appellants turn upon the fact that the restrictive covenant was for the benefit of the grantor alone, hence was not enforceable between grantees. But in these cases the right to enforce a restrictive covenant appurtenant to the property between grantees is recognized: *Badger v. Boardman*, 16 Gray, 559; *Sharp v. Ropes*, 110 Mass. 381; *Haines v. Einwachter* (N. J. Eq.) 55 Atl. 38;

*Hemsley v. Marlborough H. Co.* 62 N. J. Eq. 164, 50 Atl. 14. In *Badger v. Boardman,* 16 Gray, 559, 560, the court said:

"If it appeared that the parties to that conveyance intended to create or reserve a right in the nature of a servitude or easement in the estate granted, which should be attached to and be deemed an appurtenance of the whole of the remaining parcel belonging to the grantor, of which the plaintiff's land forms a part, then it is clear, on the principles declared in the recent decision of *Whitney v. Union R. Co.* 11 Gray, 359, that the plaintiff would be entitled to insist on its enjoyment, and to enforce his rights by a remedy in equity."

The controlling question in all cases seems to be whether the grantor intended to create an equitable servitude which should be appurtenant to the estate or intended for the mutual benefit of the respective grantees of portions of the estate for whose benefit the covenant was made. *Beals v. Case,* 138 Mass. 138; *Tobey v. Moore,* 130 Mass. 448; *Hano v. Bigelow,* 155 Mass. 341, 29 N. E. 628; *Badger v. Boardman,* 16 Gray, 559; *Summers v. Beeler,* 90 Md. 474, 45 Atl. 19; *Hopkins v. Smith,* 162 Mass. 444, 38 N. E. 1122; *Clark v. McGee,* 159 Ill. 518, 42 N. E. 965. Whenever it fairly appears from the words of the grant that it was the intention of the parties to preserve a right in the nature of an equitable servitude in the property granted for the benefit of other land owned by the grantor and embraced within the same tract as the parcel granted, such servitude becomes appurtenant to the land of the grantor, and the burden thus created will pass to and be binding upon subsequent grantees of different portions of such tract. *Whitney v. Union R. Co.* 11 Gray, 359; *Parker v. Nightingale,* 6 Allen, 341; *Linzee v. Mixer,* 101 Mass. 512; *Peck v. Conway,* 119 Mass. 546; *Clark v. Martin,* 49 Pa. St. 289; *Watrous v. Allen,* 57 Mich. 362; *St. Andrew's L. Ch. Appeal,* 67 Pa. St. 512; *Mann v. Stephens,* 15 Sim. 377. The question is one resting upon the intention of the grantor respecting the restriction or servitude, and whether the restriction in the conveyance should apply to the portion con-

veyed only, or to the other lands of the grantor included in a
general scheme for the benefit of all the lands of the grantor
embraced within such scheme, and the form of the instru-
ment used to create such restriction or servitude is not
material.   Words of covenant are as effectual as words of
grant. *Hogan v. Barry,* 143 Mass. 538, 10 N. E. 253; *Ladd
v. Boston,* 151 Mass. 585, 24 N. E. 858; Jones, Easements,
§ 113; *Tallmadge v. East River Bank,* 26 N. Y. 105; *Cur-
tiss v. Ayrault,* 47 N. Y. 73; *Schwoerer v. Boylston M. Asso.*
99 Mass. 285; *Gilmer v. Mobile & M. R. Co.* 79 Ala. 569, 58
Am. Rep. 623; *Trustees v. Lynch,* 70 N. Y. 440; *Wetmore v.
Bruce,* 118 N. Y. 319, 23 N. E. 303; *Atlantic City v. New A.
P. Co.* 67 N. J. Eq. 284, 58 Atl. 729; *Horn v. Miller,* 136
Pa. St. 640, 20 Atl. 706.   In *Greene v. Creighton,* 7 R. I.
1, tenants in common by deed dedicated a strip of land to be
used as a highway, upon which their lots, on both sides of it,
were to front, inserting in such deed a covenant "for them-
selves, their heirs and assigns, respectively," that no building
should be erected within eight feet of the street line.   This
covenant was held "a grant, in fee, to each, of a negative ease-
ment in the land of all, and as such capable, upon the disturb-
ance of the easement, of being enforced by the appropriate
remedies at law and in equity."   It is considered that the
Johnston-Weiss agreement was sufficient to impress all of
the Forest Glen property, as well that portion retained by
Johnston as that conveyed to Weiss, with a servitude in the
nature of a restriction which passed as appurtenant to the
property.   1 Jones, Real Prop. in Conv. § 784; Jones, Ease-
ments, § 110; *Peabody H. Co. v. Willson,* 82 Md. 186, 32
Atl. 386; *Burbank v. Pillsbury,* 48 N. H. 475; *Amerman v.
Deane,* 132 N. Y. 355, 30 N. E. 741.   Some point is made
by counsel for appellants to the effect that the restriction in
question did not enter into the consideration for the pur-
chase by defendants of their respective parcels.   Upon the
facts established by the findings it cannot be said that the

restriction was not an inducement to purchase. On the contrary it is quite obvious that it materially affected the value of the property for first-class residence purposes. The defendants all had notice of this restriction, and it cannot be said that it did not furnish an inducement, or enter into the consideration of the purchase. *Hills v. Miller,* 3 Paige Ch. 254; *Tallmadge v. East River Bank,* 26 N. Y. 105. The restriction being intended to apply to all of the property included in the Forest Glen tract, no covenant was necessary in the deeds from either Weiss or Johnston in order to enable the respective grantees with notice of the terms of the agreement to enforce the restriction *inter sese.* Jones, Easements, §§ 110, 113; *Whatman v. Gibson,* 9 Sim. 196; *St. Andrew's Luth. Ch. Appeal,* 67 Pa. St. 512; *Watrous v. Allen,* 57 Mich. 362, 24 N. W. 104; *Curtiss v. Ayrault,* 47 N. Y. 73; *Rowland v. Miller,* 139 N. Y. 93, 34 N. E. 765; *Ladd v. Boston,* 151 Mass. 585, 24 N. E. 858; *Greene v. Creighton,* 7 R. I. 1; *Gilmer v. Mobile & M. R. Co.* 79 Ala. 569, 58 Am. Rep. 623; *Wetmore v. Bruce,* 118 N. Y. 319, 23 N. E. 303; *Barrow v. Richard,* 8 Paige Ch. 351; 1 Jones, Real Prop. in Conv. §§ 784, 791, 792; *Burbank v. Pillsbury,* 48 N. H. 475.

Under the second and third assignments of error the question of notice is discussed. It is not claimed by appellants that record of the agreement would not constitute constructive notice if it were entitled to record, but it is insisted that it was not entitled to record within the recording acts. It is argued that the agreement does not create an "estate or interest" in land. But the statute goes further than merely providing that only an instrument which creates an "estate or interest" in land shall be entitled to record. It provides that "every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged, or assigned, or by which the title to any real estate may be affected in law or equity," is a "conveyance" within the meaning of the recording act. Even if it be conceded that the restriction in the agreement

does not create "an estate or interest in real estate" within the meaning of sec. 2242, Stats. (1898), it seems clear under the authorities that the instrument is one by which the title to the real estate therein described is "affected in law or equity." We think the authorities heretofore cited are ample upon this point, but in addition thereto we call attention to the following: *Parker v. Nightingale,* 6 Allen, 341; *Crawford v. Witherbee,* 77 Wis. 419, 46 N. W. 545; *Linzee v. Mixer,* 101 Mass. 512; *Scudder v. Watt,* 98 App. Div. 228, 90 N. Y. Supp. 605; *Uihlein v. Matthews,* 172 N. Y. 154, 64 N. E. 792; *Halle v. Newbold,* 69 Md. 265, 14 Atl. 662. It is argued by respondents that the plaintiff *Uihlein* had actual notice, but we do not deem it necessary to consider this question, since we hold that the agreement between Johnston and Weiss was entitled to record, and, having been duly recorded, was constructive notice.

It is further contended that the erection of the proposed clubhouse, and boat landing to be used in connection therewith, does not constitute a violation of the restriction imposed upon the Forest Glen property under the Johnston-Weiss agreement. The restriction is against the sale or use of any portion of the Forest Glen property "for hotel, club, or camping purposes, or for any reformatory, charitable, or penal institution." It is quite clear from the language of the restriction as well as from the provisions in other parts of the agreement that it was intended by the parties to the agreement that the use of the property by all clubs should be restricted. Obviously the word "club" in this agreement was used in its most comprehensive sense, and intended to embrace just such a clubhouse as the plaintiffs propose to construct. The term "club" is defined by Webster as "An association of persons for the promotion of some common object, as literature, science, politics, good fellowship, etc." The clubhouse here intended to be constructed, as appears by the established facts, to be used in connection with a pier, or landing place

for steamboats, and the noise, smoke, and inconvenience necessarily attendant upon the use of such landing place by steamboats, and the use of such clubhouse and golf grounds in connection therewith, would be not only a violation of the letter but of the spirit of the agreement. It cannot be doubted upon the established facts, as well as upon the face of the agreement itself, that the purpose of the parties was to preserve the character of the property as first-class residence property and to exclude such clubs and clubhouses therefrom as the plaintiffs propose to establish. But it is not necessary to go outside of the express terms of the agreement itself, because upon its face it clearly and in unequivocal terms prohibits the use of the property for hotel, club, or camping purposes, so that the restriction includes clubs of all kinds.

The case presents many interesting questions, all of which have received careful consideration by the court, and for the reasons given in the foregoing opinion it is considered by the court that the judgment below should be affirmed.

*By the Court.*—The judgment of the court below is affirmed.

The following opinion was filed April 30, 1907:

WINSLOW, J. (*dissenting*). I think the judgment in this case should be reversed, and will briefly state my reasons for my conclusion: John Johnston, Jr., originally owned the entire property, and in October, 1892, sold 13.40 acres thereof to Weiss, and at the same time Johnston and Weiss made a written agreement that the character of the whole property as first-class residence property should be preserved by them and by future purchasers and that no part thereof should be at any time occupied, used, or sold by them or by their heirs, personal representatives, or assigns for club purposes. This agreement was duly recorded and was entitled to record, and could doubtless be enforced by either party or his privies by

appropriate action against the other party or his privies. This, however, is not such an action. The parties here, both plaintiffs and defendants, are subsequent purchasers of parcels of the part reserved by Johnston, and they all claim under mesne conveyances from Johnston which contain no restrictions on the use. None of them are purchasers under Weiss or are in privity with Weiss, hence it is clear that they have succeeded to none of Weiss's rights under his contract with Johnston. The right of one purchaser from Johnston to compel a restricted use of a part of the property by another purchaser must therefore depend, not upon contract or covenant, but upon the application of some equity arising out of the facts surrounding their purchases. There is a well-established equitable principle that when the owner of a tract of land adopts and makes public a general scheme for the improvement of the tract and divides it into lots or parcels, and conveys the lots with uniform restrictions on their use, these restrictions are held to be for the benefit of all the purchasers, and may be enforced by one purchaser against another. 1 Jones, Real Prop. in Conv. § 771. In such cases the question whether the restriction creates a right which inures to the benefit of all purchasers is a question of the intention of the grantor, to be gathered from the terms of the various grants or from the surrounding circumstances, or both; and, where the intention is to be gathered from circumstances only, the circumstances relied on must be such as to show such intention by necessary and unavoidable implication. In the present case there is absolutely no evidence to show that Mr. Johnston had any intention to subdivide his reserved land when he made the contract with Weiss. The contract itself contains nothing more than would ordinarily be inserted in such an agreement between two adjoining owners of lands who had no intention to subdivide or improve, but simply intended each to bind himself and his grantees to certain restrictions in favor of the other party and his grantees. Not only this, but

it further appears that when some years later Mr. Johnston began to subdivide his own property, he inserted no clause in any of the deeds restricting the use of the property, nor was there a word said concerning such a restriction between Johnston and his grantees. If he had any such intention when he dealt with Weiss there is absolutely nothing to show that he had any such intention when, at a later period, he subdivided his remaining land. On the contrary, the implication seems to me clear that he had no such intention from the total failure to mention the subject in any way in his deeds to the plaintiffs and defendants. The plaintiffs are here with absolutely no contract rights against the defendants, and they have utterly failed to show that, when their common grantor subdivided and deeded his land, he had any intention to impose general restrictions on its use, and much less that he made any such intention public by word or act.

The law does not favor perpetual restrictions upon the alienation or lawful use of lands, and in my judgment no case was made here calling upon a court of equity to create restrictions.

DODGE, J. I concur in the foregoing dissenting opinion of Mr. Justice WINSLOW.

A motion for a rehearing was denied May 21, 1907.