Babcock, ¡J.
The question in this case arises on general demurrer to the petition.
Plaintiffs seek an injunction on the ground of defendant’s taking, for railroad purposes, their interest in certain lands without first making compensation therefor. The interest claimed is that which arises from restrictive covenants against any use of the land other than for residence purposes.
The plaintiffs allege in the petition that they are lot owners in what is known as the Frisbie Company Windermere Allotment No. 1, in East Cleveland. This 'allotment is alleged to contain 315 lots, and that, as a part of the general scheme devised by the company in selling these lots, each and all of the deeds to the purchaser from said company contain the following:
“As part of the consideration for this deed, it is hereby agreed that the said land shall be used exclusively for residence purposes. ’ ’
The plaintiffs aver that, relying upon this restriction, they each and all purchased their respective lots; that the defendant has purchased some of the lots in said allotment thus bound by the covenant, has surveyed and staked out a right-of-way through said allotment upon the lots purchased by it, and is about to construct a railroad, thereon. They further allege that the construction of a railroad in and through the allotment is a violation of the provisions contained in said deeds, and seek by injunc *387 tion to prevent the defendant company from taking these lots without first making compensation to them for their interest in the lots arising through and growing out of said building retrictions.
The following questions are involved:
1. Are these restrictions enforceable at the suit of plaintiffs?
2. If so, are they interests in land ?
3. Are they violated by a taking of the land under the power of eminent domain invoked by a railroad company ?
The demurrer admits the facts alleged in the petition. It is not alleged that the defendant had notice of this restrictive agreement. The first question is .as to the necessity of notice to make the covenant available.
The law of building restrictions, as regards the questons at issue, is stated in Jones, Real Prop., Section 771, et seq.:
‘ ‘ Where the owner of a tract of land adopts a general scheme for its improvement, dividing it into lots and conveying these with uniform restrictions as to the purpose for which the land may be used, such restrictions create equitable easements in favor of the owners of the several lots which may be enforced in equity by one of such owners. Such restrictions are not for the benefit of the grantor only, but for the benefit of all purchasers. The owner of each lot has, as pertinent to his lot, a right in the nature of an easement upon the other lots which he may enforce in equity. Whether such restriction creates a right which inures to the benefit of purchasers, is a question of intention. And to create such a right, it must appear from the terms .of the grant, or from the surrounding circumstances, that the grantor intended to create an easement in favor of the purchasers. The fact that like restrictions have been inserted in all the deeds of the grantor conveying adjacent land is a circumstance to be considered as tending to show that the restrictions were for the benefit of all the lots conveyed as' well as those retained by the grantor. If, however, the grantor has conveyed, of the adjacent land, by deeds containing no restrictions, the inference of a general plan of restrictions, for the benefit of all the lots, is negatived. The purpose had in view by the grantor who arranged the general plan of restrictions is to be taken into consideration in determining whether such restrictions are for the benefit of all purchasers of any part of the land to which they are made applicable,”
*388 Section 774: ‘ ‘ The right of grantees from the common grantor to enforce inter sese covenants entered into by each with said grantor, is confined to eases where there has1 been proof of a general plan or scheme for the improvement of the property, and its consequent benefit; and the covenant has been entered into as part of a general plan to be exacted from all purchasers, and to be for the benefit of each purchaser, and the public has bought with reference to such general plan or scheme, and the covenant has entered into the consideration of the purchases.”
Section 779: “The decisions are not in accord as to the logical principle upon which'they rest, though they agree in the result, that restrictive covenants, made for the benefit of subsequent purchasers of the land to which the restrictions apply, may be enforced by any one purchaser against another. The theory that such covenants create easements upon the lands of each purchaser, for the benefit of all the land subject to the same restrictions, has the support of the courts of many leading states (citing Alabama, Massachusetts, Minnesota, Missouri, New York and Rhode Island), but the courts of England, as well as those of some of the states, -repudiate the idea that the courts interfere on the ground of protecting an easement. ’1
The first question to consider is that of notice. The only notice alleged is, that the restrictive agreement is in all the deeds of the original grantor of the allotment. This charges it to be in the defendant’s chain of title. Notice of such restriction is necessary to bind purchasers, under the policy of the recording statutes, but constructive notice is sufficient.
“It is not necessary that a party, to be bound by such restriction, should • have actual notice. Constructive notice is sufficient, and the ordinary rules as to that subject apply. It is sufficient if the notice is contained in the chain of title. It has been held that notice consisting of knowledge that all buildings erected on certain property have been placed on a certain line is sufficient. The covenants are not binding, however, on one who tabes without notice.” 5 Pomeroy, Eq. Jurisp., Section 282. See, also, Joy v. St. Louis, 138 U. S., 1; Peck v. Conway, 119 Mass., 546; Brewer v. Marshall, 19 N. J. Eq., 537; Whitney v. Railway, 77 Mass. (11 Gray), 359.
In the latter case a sub-l-ot in an allotment bound by similar restrictions was used for livery stable purposes, and later by the defendant company for stable and street ear barns.
*389 Says Bigelow, J.:
‘! It is sufficient that the intention of the parties to the original deed to place restrictions on the use and enjoyment of the estate granted is clear. The grantee, by accepting the deed and taking title under it, w.as bound to comply with its stipulations so far as, from their nature, they were to be performed by the owner of the land, or created a -right or privilege thereunder in the nature of an easement in favor of its grantor and those claiming under him. This deed was duly registered, and the defendants claiming title derivatively under the grant have constructive notice of its stipulations, and are bound in equity to observe them. ’ ’
In Cincinnati, W. & Z. Ry. v. Bosworth, 46 Ohio St., 81, B sued the company for damages, under favor of the railway fencing statute, for failure to fence the right-of-way. The company answered that it was successor of -another company which had acquired the right of way from B’s predecessor in title, who covenanted to “build and sustain” a fence. The agreement to so build and maintain the fence was evidenced by a separate instrument, and was not recorded. It was conceded that plantiff did not have actual notice of its. existence when he purchased. The question of notice was directly involved.
“A written agreement by the grantor of the right-of-way to a railroad company to fence it on each side from his lands will not affect the right of a subsequent purchaser to require the company to fence its road under the provisions of Sections 3324 and 3325, Revised Statutes (General Code, 8913 and 8915), where the purchase was made without actual notice or constructive notice of the existence of such agreement. ’ ’
Minshall, J., says:
“Now, conceding that there may be some question as to whether such an agreement may be made to run with the land, so as to affect a subsequent purchaser, yet in every case, where it is so held, it is subject to the equitable qualifications that the purchaser had notice of the agreement. And we may further observe, that to give them such effect against a purchaser without notice, would not-only be inequitable, but contrary to the policy of our recording statutes. * * * Had the instrument been properly executed, acknowledged and recorded, it would have constituted notice; but such was not the case,.and the rights of defendant under it are of an equitable nature, and can not avail against a purchaser without notice.”
This requirement was complied with in this case, and constructive notice is alleged in the allegation that the restrictive provi *390 sion was in all of the deeds of the original grantor. Therefore the petition is not demurrable for want of an allegation of notice.
Is the Eight Secured by This Eestrictive Covenant an Interest in Land?
The right to an injunction is dependent upon the right to compensation for property sought to be appropriated. This right depends upon the answer-to the question whether the right secured by this restrictive covenant is an interest in land.
General Code, 8759 (Eevised Statutes, 328.1) authorizes railroad companies and municipal corporations owning or operating a railroad to ‘ ‘ enter upon any land for the purpose of examining and surveying its railroad line, and appropriate so much thereof as may be deemed necessary, ’ ’ etc.
General Code, 4682 (Eevised Statues, 1536), interpreting the municipal code, defines “land” as including “rights and easements of an incorporeal nature. ’ ’
. General Code, 11039 (Eevised Statutes, 6415) provides for “appropriation if parties can not agree as to the compensation to be paid for the property, or easement, or interest therein, sought to be appropriated.”
General Code, 11042 (Eevised'Statutes, 6416), says the petition shall contain a ‘ ‘ specific description of each parcel of property, interest, or right, within the county, sought to be appropriated”; and the names of the persons “having or claiming an interest, legal or equitable, in the property, ’ ’ etc.
■ These remedial statutes do not define what interests may be appropriated, but they throw light upon the scope and meaning of the terms employed in providing for the appropriation of those interests.
An easement or interest in the land, legal or equitable, seems necessary to bring it within the terms of the appropriation statutes and the constitutional provision safeguarding private property. Is the right under consideration such easement or interest ?
In a note to 5 Pomeroy, Eq. Jurisp., Section 274, the author says:
*391 “In some jurisdictions such covenants are called covenants running with the land. Elsewhere they are said to be in the nature of easements; and in still other jurisdictions they are simply called restrictive covenants. Under whatever names, the principles applied are practically the same. So that, for the purpose of this treatment, we may disregard the diversity. Even where they are called covenants running with the land, it is held that they are covenants enforceable only in equity. It would seem that the most accurate description is ‘equitable easements,’ for these terms describe the particular covenants to the exclusion of all others. ”
A standard definition of an easement is,
“that it is a privilege without profit, which the owner of one neighboring tenement has of another, existing in respect of their several tenements, by which the servient owner is obliged to suffer or not to do something on his own land for the advantage of the dominant owner.
“An affirmative easement is one which entitles the dominant owner to malee active use of the servient tenement, or to do.some act which, in the absence of the easement, would be a nuisance or a trespass.
“A negative easement is a right in the owner of the dominant tenement to restrict the owner of the servient tenement in respect of the tenement in the exercise of general and natural rights of property.” 10 Am. & Eng. Enc., 398.
The plaintiffs contend this restrictive agreement creates an easement or a right in the nature of an easement in the land, legal or equitable.
The claim of the defendant company is, that the right thus created is personal rather than real, and that it does not run with the land; but equity charges the conscience of the owner with .an obligation which good faith requires him to keep while seized of the title to the property.
. A real covenant is ‘ ‘ that whereby a man doth bind himself to pass a real thing, as land or tenements, * # * or where it doth run in the realty so with the land that he that hath one hath or is subject to the other.” Sheppard’s Touchstone, Chap. 7, p. 161.
Again, “a real covenant is one where either the liability imposed by it or a right to take advantage of it exists by reason of *392 the ownership of an estate or'interest in real property.” 19 Am. & Eng. Enc. (1st Ed.), 974.
The adjudged eases may be grouped into three classes: (1) those basing the right to relief on the moral duty to keep an agreement involving a restricted use of real property; (2) those basing the right on an equitable easement created by a covenant; and (3) those founded on pure easements in the land.
Illustrative of the first class is Lewis v. Gollner, 129 N. Y., 227. G, who was a builder of tenement houses, entered into a contract for the purchase of a lot for the ercetion of a tenement house in a neghborhood. occupied by private residences of a superior character. The neighboring residents, to prevent this erection, took an assignment of Gollner’s contract, giving him a large advance upon the purchase price, and accepting from him an oral agreement that he would not construct any flats in the immediate neighborhood. He afterwards bought another lot, took title in the name of his wife, and, as her agent, proceeded to construct a tenement house. It was held that the oral agreement entered into by Gollner created an equity for the benefit of the neighboring residents which attached to the second lot at the time of its purchase by him, and ran with the second lot, in equity, in the hands of assignees of purchasers who took with notice, and that, the wife being such an assignee, the erection might be restrained.
The second class includes the larger group of eases where a restrictive covenant in the deed limits the uses of the property, but is enforceable only in equity. Whitney v. Railway, supra, is illustrative of this class, and in an illuminative opinion, Bigelow, J., states with clearness the opposing views as to the basis of the right to relief which covenants of this kind secure:
‘ ‘ To what extent and in what cases are such stipulations binding on those who take the estate under the grantee, directly or- by a derivative title? Upon this point the better opinion would seem to be, that such agreements are valid and capable of being enforced in equity against all those who take the estate with notice of them, .although they might be, strictly speaking, real covenants so .as to run with the land, or of a nature to create a technical qualification of the title conveyed by the deed. This op inion. rests on the principle that, as an equity that which is *393 agreed to be done shall be considered as performed, a purchaser of land with notice of a right or interest in it subsisting in another is liable to the same extent and in the same manner as the person from whom he made the purchase, and is bound to do that which his vendor has agreed to perform. Therefore an agreement or covenant, though merely personal in its nature, and not purporting to bind assignees, will nevertheless be enforced against them unless they have a higher and better equity as bona fide purchasers without notice. It is on this ground that a purchaser of an estate, taking it with notice of a prior agreement by the vendor to sell it to another, can be compelled in equity to convey it according to such agreement. In like manner, by taking an estate from a grantor with notice of valid agreements made by him with the former owner of the property concerning the improvement or occupation and use of the estate granted, the purchaser' is bound irt equity to fulfill such agreements wth the original owner, because it would be unconscientious and inequitable for him to set aside and disregard the legal and valid acts and agreements of his vendor in regard to the estate of which he had notice when he became its purchaser. In this view, the precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as as assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he can not equitably refuse to perform.”
Sugdon, Vendors (2d Ed.), 734-743:
“The validity of agreements similar to this in the plaintiff’s deed to White has been also recognized and used, and their performance enforced in equity as against subsequent purchasers with notice, upon the ground that such stipulations create an easement or privilege in the land conveyed for the use and benefit of the grantor and those who might afterwards claim under him as owners of adjacent land of which the land granted originally formed a part. In such cases, although the covenants or agreements in the deed, regarded as a contract merely, is binding only on the original parties, yet, in order to carry out the plain intent of the parties, it will be construed as creating a right or interest in the nature of an incorporeal hereditament or easement appurtenant to the remaining land belonging to the grantor at the time of the grant, and arising out of and attaching to the land, part of the original parcel conveyed to the grantee. When, *394 therefore, it appears, by a fair interpretation of the words of a grant, that it w.as the intent of the parties to create or reserve a right in the nature óf a servitude or easement in the property, granted for the benefit of other land owned by the grantor, and originally forming, with the land conveyed, one parcel, such right will be deemed appurtenant to the land of the grantor, and binding on that conveyed to the grantee; and the right and burden thus created will respectively pass to and be binding upon the subsequent grantees of the respective lots of land.”
The doctrine thus .announced is, that personal covenants, as well as real covenants, may be enforced in equity between proper parties. If a covenant runs with the land, it is a real covenant. It is in the nature of a real covenant when either the liability imposed by it or the right to take advantage of it passes to any transferee of the land, or of that interest therein to which the covenant relates, by virtue of the transfer, although such covenant be not mentioned in the instrument of transfer.
It can not be successfully contended that the covenant under consideration is a personal one; but it is claimed, whatever definition be given it, it does not create an interest in real property.
The third class finds illustration in Ladd v. Boston, 151 Mass., 585, where the restrictive right was secured by a covenant which was held to create a pure easement:
‘ ‘ If the owners of lots fronting upon a square of land in a city mutually agree that certain places, avenues and passageways, as laid out upon a plat, shall remain open as an appurtenant to several lots, and that no building shall be erected upon certain lots within ten feet of the front line thereof, unless a majority of the owners shall so elect, nor shall any building extend above a certain height, such agreement entitles each of the owners to an easement; and if a city, in the exercise of the right of eminent domain, takes a lot which is subject to such easement in favor of any owner of another lot, it must compensate him for the loss of his easement. ’ ’
The first class, of which Lewis v. Gollner, supra, is an Lustration, is clearly not based on an interest in land.
The second class involves restrictive agreements or covenants in deeds of the property restricted and those for which the restriction is made.
*395 These covenants bind purchasers with notice, and when they savor of the realty and run with the land they are called equitable rather than legal easements, because they afford only an equitable remedy. This fact does not indicate that they are not interests in land; it indicates only that relief for their violation is not afforded by any form of common law procedure.
The following objections to such actions at law have been successfully urged:
First. “At common law choses in action were not assignable, and none but parties or privies to express covenants were bound by them or could take advantage of them. The rule seems to have been well settled in England, and to avoid its effect and enable the assignee of the reversion to maintain an action in his own name upon the express real covenants, those running with the land, the statute 32 Henry VIII, Ch. 34, was enacted. Prior to that time grantees of reversions were regarded in the light of strangers. After its passage, in virtue of the act itself, the assignee of the reversion could maintain his action upon the express real covenants.” Crawford v. Chapman, 17 Ohio, 449.
In this case the court announced that this statute never became a part of the law in this state, except by re-enactment in 1805, and that it remained upon the statute books only until January 2, ^06. It was therefore held that the grantee of the reversion could not maintain the action of covenant. This objection was removed by the code of civil procedure, and the first proposition of the syllabus in Masury v. Southworth, 9 Ohio St., 341, is as follows:
“1. An assignee of a reversion, having also assigned to him by the terms of his contract of conveyance, the benefit of the covenants in a lease, may bring an action in his own name, for a breach of such covenants, as a party beneficially interested, under the code of civil procedure, which, in this respect, supplies the statute 32 H., 8, cap. 34.”
It was also held in this case that:
“It is not indispensable, to make such a covenant (to insure) run with the land, that ‘assignees’ should be expressly named; but the covenant being one which may be annexed to the estate and run with the land, equivalent words or a clear intent shown by the whole instrument may suffice. ’ ’
*396 In Houston v. Railway, 21 Ohio St., 235, it was held that an agreement of a railroad company “to erect and forever keep up a fence and crossing in a specified manner, ’ ’ which agreement was carried into the journal entry in an appropriation proceeding, “is an agreement running with the land, so as to be binding as between the assignees of grantees of parties thereto.”
In this ease a grantee through successive deeds sued the successor of the original railroad company for damages for failure to build fences, and recovered in an action at law. The covenant ran to ‘ ‘ the owner of the land, his heirs and assigns. ’ ’
Second. It has been held that an agreement like the one contained in the deeds on which the plaintiffs rely is not a covenant, and will not sustain an action by a subsequent grantee of the adjoining land against a purchaser where the stipulation is contained in a deed poll. The reason given for this holding is, that in a deed poll the grantee neither signs nor seals the instrument, and therefore incurs no direct obligation to perform anything provided in the deed.
In Kennedy v. Owen, 136 Mass., 199, this doctrine is discussed, and the adjudications on the subject considered and commented upon at length.
Allen, J., says, p. 201:
“It is also clear that the stipulation is not technically a covenant, running with the land. The grantee sealed nothing. In Parish v. Whitney, 69 Mass. (3 Gray), 516, it was held that a stipulation in a deed poll, that the grantee, his heirs and assigns, should erect and perpetually maintain a fence between the land granted and other land of the grantor, did not create an incumbrance on the granted premises, within -the meaning of a covenant against incumbrances in a deed subsequently made by the grantee. The court said that it was not a reservation out of the estate granted, nor a condition, nor a covenant, running with the land or otherwise; but that it was only a personal agreement of the grantee, evidenced by his acceptance of the deed, which might bind him and his legal representatives, but did not affect the estate. That case was criticised in Burbank v. Pillsbury, 48 N. H., 475, where it was held that such an agreement was of the same effect as an express covenant, signed and sealed by the grantee; that it would run with the land; that it created an incumbrance upon the land; and by implication it was recognized *397 that a subsequent grantee would be liable to the original grantor in an action of assumpsit on the agreement. No question arose there, or could arise, whether an assignee of the grantor could maintain such action. A decision substantially similar was made in Kellogg v. Robinson, 6 Vt., 276, where the stipulation was regarded as a covenant, or a condition; and it was held that it created an incumbrance on the land, within the meaning of a covenant against incumbrances. ’ ’
In Bronson v. Coffin, 108 Mass., 175, i't was held “that a formal covenant by the grantor, in a deed of a portion of his land, that he and his heirs and assigns would make and maintain a fence between the land granted and his remaining land, with a provision that this covenant should be perpetual and obligatory upon all persons who should become owners of the land adjoining to that granted, created an interest in the nature of an easement, and ran with the land, and created an incumbrance upon the land, within the meaning of a covenant against incumbrances in a subsequent deed of such adjoining land; and in referring to Parish v. Whitney, supra, the court, by Mr. Justice Gray, incidentally remarked, ‘If that decision can be supported, it must be as falling within the rules that no easement in or right affecting real estate can be created by contract of the party, except by deed, and that an agreement not sealed by the party who is to perform it can not create a covenant or run with the land.’ The above decisions in New Hampshire and Vermont were cited and commented upon. ’ ’
The doctrine of the Massachusetts case is relied upon by the defendant company, as authority in favor of the proposition that restrictive agreements in deeds poll are not interests in land.
In Hickey v. Railway, 51 Ohio St., 40, it is held:
“Where a railway company makes a deed poll of land in fee, along which its right-of-way is located, subject to the condition ‘that the said grantee, his heirs and assigns, shall make and maintain good and sufficient fences on each side of the right-of-way of the railway as now located and built, which condition and obligation shall be perpetually binding on the owners of the roadHeld-.
“1. That the grantee, by accepting the deed, will be deemed to have entered into an express undertaking to perform the *398 conditions contained in the deed, and such undertaking will run with the land and become.obligatory on a subsequent owner by purchase from the grantee of the company.”
In this case Dickman, J., p. 47, comments on the Burbank and Kellogg eases in New Hampshire and Vermont with approval of the doctrine therein stated. In fact the case seems ruled by the principle announced in these cases.
Third. Since easements lie in grant or prescription, it has been held that a restrictive covenant, being nothing more than a reservation, can not create an easement. The modern doctrine is otherwise, “and such an easement may be created by words of covenant as well as by words of grant.” Hogan v. Barry, 143 Mass., 538.
Fourth. Subsequent purchasers may, by force of their deeds, be considered assignees of the covenant running to their grantors, the owners of the dominant estate, since such covenants are divisible ; and prior purchasers can not be held assignees of a covenant which does not exist at the time of their conveyance, but may have a right to enforce it in equity, though subsequently created, where the restrictions are mutual and made in pursuance of a general plan or scheme of restriction. In such, case it is plain a restrictive right inheres in the title, but is enforceable only upon equitable principles.
These are some of the reasons given for denying an action at law on these covenants, and for giving them the name of “equitable easements.” Some of these objections have been removed by the enlarged and liberalized procedure. In all of the cases cited above from the courts of this state, except that in Crawford v. Chapman, supra, the actions were at law between holders of derivative titles; and such actions were held maintainable. In many of the cases referred to the right was only an equitable one, but this involves the question of procedure rather than substantive right. A given covenant may afford to certain parties a remedy at law, while others stand to it so far removed -as to be entitled to relief only by reason of some equitable doctrine. It seems to me it would be illogical to hold the nature of the right involved to be different when the same covenant is the basis of both forms of action.
*399 The third class involves those .based on true easements, and are enforced on both the law and equity side of the court. It is difficult to see what element is involved in the law of easements that is wanting in the covenant under consideration.
In Wolfe v. Frost, 4 Sanf. Ch. (N. Y.), 77, it was held that:
“An agreement between the owners of two adjoining city lots, that if the one will build a dwelling upon his lot, three feet back from the line of the street, the other will, whenever he builds on his lot, set his building back the same distance from the street, is an interest in lands, and if not in writing' is void by the statute of frauds. ’ ’
The court says, p. 94:
“It is claimed, on the part of the complainant, that the urban servitude which he seeks to establish against the defendant’s lot is not an estate or interest in land^ nor a trust or power over or concerning land, that he claims no right in the defendant’s land, his claim being not so much an easement as a right in the nature of an easement, founded on Yan Ranst’s claim that he would use his land in a particular manner. And he defines his claim as a privilege growing out of the restricted use of Yan Ranst’s land thus contracted for. It is difficult to perceive how this right, if it be neither an estate nor interest in or over Yan Ranst’s land, can be said to have run with the land, into the hands of the heirs and their grantees, which is a proposition also urged by the complainant. But I need not speculate on the apparent inconsistency of the two positions.
“It is impossible for the complainant to describe his claim, - without plainly showing that it is an interest in the land owned by the defendant.
“The definition of an easement as given so long ago as the Termas de la Lay, includes this right as it was defined by one of the learned counsel: First, they are incorporated; and second, one imposed upon corporeal property; third, they confer no right to a participation in the profits arising from such property; fourth, they are imposed for the benefit of corporeal property; and fifth, there must be two distinct tenements, the dominant, to which the right belongs, and the servient, upon which the obligation rests.
“The right or privilege set up in the bill contains each of these essential qualities. It is, as there stated, on incorporeal hereditament accessory to the complainant’s tenement, and attached to the soil of Yan Ranst’s as the servient tenement; sub *400 jecting the latter for the benefit of the former; and, as such hereditament, it would pass with the servient heritage to each successive proprietor, precisely as the complainant insisted in his points. In Parker v. Foote, 19 Wend. (N. Y.), 309, where the claim set up was a right to continue the enjoyment of light and air through windows overlooking the adjoining land, Judge Benson, in delivering the opinion of the court, speaks of the claim as one by which the party acquired a beneficial interest in the land of his neighbor, and by which the latter forfeited such interest. ’ ’
What is said of a covenant in that case is equally applicable to the one in the case at bar.
3 Pomeroy, Eq. Jurisp., Section 1296, treats of these equitable rights as follows:
‘ ‘ All the distinctly equitable doctrines with regard to the rights and liabilities arising from and remedies for the enforcement of such contracts are the necessary and logical deductions from this fundamental conception; that an executory agreement creates specific equitable interests in the property which is its subject-matter. ’ ’
Among the cases relied on by the defendant as reaching the conclusion that these restrictive agreements are not interests in land, are the following:
In Tobey v. Moore, 130 Mass., 448, the court held that the violation of the covenant did not work a defeasance of the estate, that it was in the nature of a restrictive covenant, and not a condition upon which the title was divested.
Gray, C. J., says: “It does not affect the title, but only the mode of use. ’ ’ The meaning evidently is, that it does not affect or accomplish the defeasance of the title, but only affects and qualifies the use. In other words, that it is a restriction, and not a condition.
De Gray v. Club House Co., 50 N. J. Eq., 329, is an exhaustively treated, well reasoned case involving the nature of restrictive covenants and the rules of enforcement.
The chancellor says, p. 339:
“In New York relief seems to be granted on the theory that the covenant creates an easement over the lands of the covenantor for the benefit of all other, lands subject to the same covenant, Co *401 lumbia College v. Lynch, 70 N. Y., 440, and the Massachusetts decisions lean in the same direction. Beals v. Case, 138 Mass., 138, 140.
■ “'While eases involving light, air or view might in some respects be based on the doctrine of easements, it is not satisfactory when it comes to be applied to covenants as to uses which buildings are to be put, nor could the covenant, if it created an easement, be suspended because a subsequent purchaser did not buy with the restrictions of the covenant in view. But, as stated, the courts in England as well as our courts of errors and appeals, have repudiated the idea that the court interferes on the ground of protecting an easement.
“The equity would seem to spring from the presumption that each purchaser has paid an enhanced price for his property, relying on the general plan, by which all the property is to be subjected to the restricted use, being carried out; and that while he is bound by and observes the covenant, it would be inequitable to him to allow any other owner of lands, subject to the same restrictions, to violate it. ’ ’
Because the restriction lapses or is suspended, unless the purchaser relies on it and it becomes part of the consideration, by reason of which he gives an enhanced price for the property,the learned chancellor concludes it is not of the nature of an easement, and rejects the doctrine of -enforcing it as an equitable interest in land. Where mutual restrictions of an allotment of land are made, under a general scheme, the reasoning is unsatisfactory that purchasers ignorant of them when buying the lots are not within the protection of the covenant. If two lots were mutually bound and purchased by third parties, one of whom bought relying on the restriction, while the other was ignorant of it, would both or neither remain bound, or would one be released from the servitude and the other held? To my mind, no satisfactory solution of the question is reached in holding the restriction released; but if this view is not tenable, does it follow that the right is not an equitable interest? Because the intention may control it, offers, I think, no test, for in the case of easements, which are surely estates in land, intention to no longer rely on them and enjoy them works their extinction.
There are many other American cases following the New Jersey case cited; but the reasoning of that case covers the doctrine of them all, and makes their citation unnecessary.
*402 The chancellor above quoted from states that the courts of England have repudiated the idea that the court interferes on the ground of protecting an easement. I shall content myself with citing the latest case which I can find in the English reports, being Longeaton Recreation Grounds Co. v. Railway, 2 King’s Bench Division, p. 574.
The syllabus is as follows:
‘ ‘ The breach of a restrictive covenant may be the ground for a claim for compensation, under s. 68 of the Lands Clauses Consolidation Act, 1845, by the owner of land for the benefit of which the restriction was imposed.
“A railway company took, for the purpose of their undertaking, land which was subject to a covenant, entered into by their vendor, not1 to erect thereon ‘any building .other than private dwelling-houses.’ The company erected a railway embankment on the land.
“Held, that the erection of the embankment was a breach of the covenant. ’ ’
Two questions were contended for in this case, (1) that the embankment was not a building, and (2) that the restrictive covenant was not an interest in land.
It is true that the English act referred to provides for compensation for property “injuriously affected” by the taking for railway purposes; while in this state compensation can be given only for property “taken.”
In Story v. Railway, 90 N. Y., 152, the English statute and the adjudications thereunder are referred to by Danforth, J., as follows:
“In Eagle v. Railway, L. R., 2 C. P. Cases, 638, it was held that an easement was an interest in land, for the invasion of which compensation may be claimed, under the Land Clauses Consolidation Act (8 Vict., Chap. 18), and the principle was applied to a claim made for compensation in respect to damages sustained in consequence of diminution of light to the plaintiff’s premises by erection near them of the defendant’s works. The statute referred to is in some respects dissimilar to the provisions of those acts under which the defendant justifies, but if I am right in my conclusions that the plaintiff’s easement was acquired by grant or agreement, the grounds upon which the decision was put are equally available here. Bovill, Ch. J., said: *403 “The improvement is common to all the neighborhood, but the injury to the plaintiff’s premises by the diminution of light is peculiar to the plaintiff. For the defendant, it was urged that the only right to compensation is in respect of damage to an interest in land — damage to the land itself.’ But different members of the court call the attention to the fact before referred to by Bovill, Ch. J., saying the premises have sustained damage by reason of diminution of light, or have been affected thereby. Smith, J., sa’d: ‘The invasion of a right of way, or of water, or of light, gives a cause of action, ’ and disposing of the case in favor of plaintiff — three judges delivering opinion — a critical examination is made of other deeis’ons, including that of Ricket v. Railway, finally decided in the House of Lords, L. R., 2 H. L., 175, Keating, J., saying: ‘It is now clearly settled,’ by that decision, ‘that compensation can only be claimed where land itself or an interest in land is injur'ously affected; and that a damage to "the plaintiff’s trade by the obstruction of access to his premises by a public highway is too remote. In the present case the award finds that the premises are directly injured by diminution of light.’
“Bovill, Ch. J, amplifies the suggest’on .by him and above referred to, and Smith, J, says, ‘the right which has been invaded here is a right to an interest in land, and the damage in respect of which the plaintiff claims compensation is not too remote, but is directly consequent upon the loss of the plaintiff’s property in the light.’ ”
. The judges decided the English case under consideration, after determining that an embankment is a building within the meaning of the covenant, and considered at length the nature of the right which a covenant secures.
Collins, M. R., p. 581, et seq., says:
“Then we come to the real point in the case — whether a breach of a restrictive covenant is the subject of compensation under s. 68 of the Lands Clauses Consolidation Act of 1845. ■ In point of principle, I can not see why it should not be. A distinction has been drawn in cases under this section between injury to the person who happens to be for the time being the owner of the land, and damages to the value of the land itself. If the damage in respect of which compensation is sought is only incident to the particular purpose for which the owner is occupying the land, that is held to be excluded from compensation; but if the market value of the land is affected, then' the land is affected. It is a matter of common sense that when by covenant, by an *404 easement being attacked, or in any other way the value of the land is enhanced, and the railway company subtract a portion of the value by making their railway they are injuriously affecting the land. The matter was discussed in Beckett v. Railway, by the late Sir James Shaw Willes, and it was pointed out that while an annoyance which the owner of a particular piece of land has to suffer in common with every one who lives near a railway is not subject-matter for compensation, the special subtraction of any right incident to the land is. He gave as an instance the case of land approached by a broad road which, by the operations of a jrajlway company, has been narrowed, .and pointed out that, with regard to land, or a house on the land, injuriously affected by there being a narrow and difficult approach instead of a wide and east one, it was obviously a case of injuriously affecting. That being so, why is not the withdrawal of a restriction imposed on the adjoining land, for the benefit of the land retained, to be subject to compensation? No reason can be alleged except the suggestion that no authorities can be found to support this view. It seems to me that, starting with the principle, and coming to the conclusion that, apart from authority, the burden of showing that the principle was not applicable would be on those who say that no compensation should be given, there is sufficient authority. * # * In In re Masters & Great Western Railway, the right in question was not negative, but a right by covenant for the purchaser of mineral rights to sink a pit upon the land of the lessor. The railway company took the land of the lessor, and the question was, whether the’ colliery proprietor was entitled to say that his land was injuriously affected by the taking of land where otherwise he might have made a new pit. He could not enforce the right against the railway company, and it was held that there was a subject-matter for compensation. It seems tó me that it can make no difference whether the right was an affirmative one to open a pit, or a negative one to have the premises kept in a certain condition for the benefit of the other land. In either case the value of the land to which the benefit was attached would be reduced. ’ ’