𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

JOHNSON AND OTHERS V. LAKE DRUMMOND CANAL AND
WATER COMPANY AND OTHERS.

June 12, 1919.

1. CANALS—*Condition in Franchise of Free Use to Abutting Owners
    —Abandonment of Canal—Case at Bar.*—By Laws 1839, ch.
    145, a canal company was authorized to build a certain canal
    and condemn the necessary lands.  The act provided, how-
    ever, that the canal should be free for the vessels of owners
    on abutting lands.  Before the construction of the canal these
    owners could reach deep water by navigable creeks or streams
    on which they bordered, but access to deep water was com-
    pletely shut off by the construction of the canal.  The canal
    company obtained its right of way by purchase and condem-
    nation and not by a grant from the State.  By act of General
    Assembly the canal company was authorized to abandon the
    operation of the canal and sell the property.  Suit was brought
    by the property owners to enjoin the canal company and a
    railroad to whom the canal company had given the right to
    cross the canal with a fill, bridge or obstruction which would
    prevent the navigation of the canal.
    *Held:* That the act authorizing the abandonment of the canal was
    constitutional and that complainants were not entitled to an
    injunction against the railroad company.

2. CANALS—*Conditions—Right of Abutting Owners to Use Canals
    Free—Easement.*—Where a franchise is granted to a canal
    company to operate a canal and condemn the right of way,
    upon condition that the abutting owners should have the use
    of the canal free for their vessels, and the right of way was
    not granted by the Commonwealth, but acquired in fee from
    private owners by purchase or condemnation, only the right
    to operate the canal was dependent upon the canal company's
    right to exercise its franchise; hence the condition of free use
    was imposed only on the right of exercise of the franchise.

3. CANALS—*Conditions—Right of Abutting Owners to Use Canals
    Free—Easement—Franchise as Servient Estate.*—So long as the
    condition of free use referred to in the preceding syllabus re-
    mained imposed on the franchise, just so long the abutting

owners enjoyed the right of navigation as incident thereto, and that was a right appurtenant to the lands of the abutting owners because made so by the statutory condition. So far as the abutting owners are concerned, and as to them, the right fulfilled all of the requisites of an "affirmative easement" appurtenant to a dominant estate. The right did not lack the existence of a tenement as a servient estate. The right was imposed upon a franchise, it is true, but that is a tenement. The right of free use may therefore be regarded as an easement, but it is attendant upon the right of exercise of the franchise as a servient estate, not upon the canal site.

4.  CANAL COMPANIES—*Condition of Free Use to Abutting Owners.*— Where the legislature granted a franchise to a canal company on condition that the abutting owners should have the right of free use of the canal, the contract which the grant created was solely between the Commonwealth and the canal company. The right of free use, therefore, was not derived by the abutting owners, by grant from the Commonwealth to them, nor under any contract of the Commonwealth made with them.

5.  CANAL COMPANIES—*Abutting Owners—Right of Free Use — Abandonment of Canal.*—Where a franchise to a canal company was conditioned upon the company allowing free use of the canal to abutting owners, although it is true that it may have cost the canal company less to acquire the land for the canal from the landowners, by reason of the fact of the condition, this did not make the condition a contract provision for the perpetual operation of the canal for the benefit of such landowners, as a grantee of a franchise may cease to exercise it, in whole or in part, at any time, with the consent of the Commonwealth, in legal contemplation it must be regarded as having been in the minds of the parties at the time of the acquisition of the right of way for the canal, by purchase or condemnation, that the canal might not be perpetually operated in which event the site of the canal would not revert to its former owners, but would belong to the canal company or to its successors or assigns in fee, and so much of the remaining land of such former owners of the canal site as was shut off by the canal construction from the deep-water navigation would remain so shut off thereafter.

6.  CANALS—*Use by Abutting Owners—Abandonment of Canal.*—The right of owners of land on a canal owned and operated by the State or under State authority, who have used the canal for the benefit of their abutting lands without any contract right to continue to do so, and merely by acquiescence of the State or the operator of the canal, terminates when and to the extent that the operation of the canal ceases with the assent of the Commonwealth. If the Commonwealth permits

the holder of the franchise to abandon the canal in whole or in part, individuals who have enjoyed its use, without any contract right to continue to do so, have no right to complain.

Appeal from a decree of the Circuit Court of Norfolk county. Decree for defendants. Complainants appeal.

*Affirmed.*

The bill in this cause is as follows:

"Humbly complaining show unto your Honor your orators, W. S. Johnson, T. B. Johnson and William H. Deal, who sue for the benefit of themselves, and all other persons similarly situated who may desire to become parties to, and will contribute to the costs of this suit, the facts following:

"1: That the said W. S. Johnson, T. B. Johnson and William H. Deal are the owners separately of five separate tracts of land situated in Norfolk county, Virginia, and abutting in part on what is known as the Gilmerton cut of the canal formerly belonging to the Dismal Swamp Canal Company and more recently belonging to the Lake Drummond Canal and Water Company, one of the defendants herein.

"2. That the said Gilmerton cut is the portion of the canal formerly belonging to the Dismal Swamp Canal Company, and more recently belonging to the said Lake Drummond Canal and Water Company that runs from the former northern termination of the Dismal Swamp Canal in Deep creek in Norfolk county to the Southern branch of the Elizabeth river, at or near Gilmerton, in Norfolk county. The exact location of said cut is shown by a topographic sheet, filed herewith as a part of this bill marked 'S,' on which the said Gilmerton cut portion of the canal is designated by the line from the letters A. to B., which letters

have been placed in ink on said topographic sheet, and the lands of your orators are situate on both sides of, and abut on, said Gilmerton cut portion of said canal, as shown on said topographic sheet.

"3. That the Lake Drummond Canal and Water Company, one of the defendants herein, in whom is the ownership of said Gilmerton cut portion of said canal, is the successor in title to all the charter rights, privileges, franchises and properties formerly belonging to the Dismal Swamp Canal Company, and, as such successor, is subject to all the obligations, liabilities and duties of the said Dismal Swamp Canal Company.

"4. That the said Dismal Swamp Canal Company was chartered on the 1st day of December, 1787, by the General Assembly of Virginia under an act entitled 'an act for cutting a navigable canal from the waters of the Elizabeth river, in this State, to the waters of Pasquotank river, in the State of North Carolina,' and, by section 11, it was provided:

" 'That the said canal and works to be erected thereon in virtue of this act, and the causeways, when completed, shall forever hereafter be esteemed and taken as public highways, free for the transportation of all goods, wares, commodities, or produce whatsoever, and for traveling, on payment of the tolls imposed by this act, and no other toll or tax whatever, for the use of the water of the said canal, and the works thereon erected, or the causeways, shall at any time hereafter be imposed by both or either of the States; subject, nevertheless, to such restrictions as the legislatures of the said States may concur in, to prevent the importation of prohibited goods, or to prevent fraud in evading the payment of duties imposed in both or either of the said States, on goods imported into either of them.' * * *

"That the States referred to in said section 11 of said act are the States of North Carolina and Virginia, which said States acted jointly and together in the creation of said canal, as will appear from the act of the 1st of December, 1787, herein referred to.

"5. That that portion of the canal known as the Gilmerton cut, hereinabove mentioned, was constructed and built and maintained under the act of the General Assembly of Virginia, passed February 9, 1839, which is in the words and figures following:

" 'Whereas, doubts have arisen as to the true construction of the "act authorizing the Dismal Swamp Canal Company to open a navigable communication between the canal and the nearest navigable part of the Northwest river, and for other purposes," passed January the twenty-ninth, eighteen hundred and eighteen, for remedy whereof,

" '1.  Be it enacted by the General Assembly, That the said act shall be deemed and taken as giving full power and authority to the president and directors of the Dismal Swamp Canal Company, to make a sufficient outlet, or canal, from or near the present northern termination of the said Dismal Swamp canal, in Deep creek, to some place on the southern branch of the Elizabeth river, below the mouth of Deep creek; and that the condemnation of lands necessary for such purpose shall be made in the manner and upon the principles prescribed in the charter of the said canal company, and full power and authority are hereby given to the president and directors of the company to make the said outlet or canal, as aforesaid, and to condemn the lands necessary for that purpose, in manner aforesaid.

" '2.  And be it further enacted, That the president and directors of the said company shall be, and they are hereby, authorized and empowered to erect a lock, or locks, on the said outlet or canal of sufficient dimensions and suitable for vessels navigating the said Dismal Swamp canal.

" '3. And be it further enacted, That the act passed on the second day of February, eighteen hundred and thirty-eight, entitled "an act to authorize the erection of a lock and dam in Deep creek, by the president and directors of the Dismal Swamp Canal Company," shall be so construed as to leave the erection of said lock to the discretion of the said president and directors, anything in said act, to the contrary notwithstanding:    Provided, however, *that the outlet and lock, or locks, which the said company may cause to be constructed under this act, shall be free for all vessels, boats, lighters and rafts of timber the proprietors of which reside, or own lands upon said outlet, or Deep creek, to pass and repass, free of any charge of toll or tonnage at all times, when it can be safe to open said lock or locks; and, if any such vessels, boats, lighters or rafts of timber, shall be detained or hindered in passing the same, through any fault or neglect of said company, their agents or servants, the said company shall be liable for all injury or damage sustained thereby, to be recovered by warrant, petition or action at law, according to the extent of damage sustained, as the case may be.'*

"6. *That before the construction of the Gilmerton cut portion of said canal, the lands now owned by your orators bordered on, or. were intersected by, navigable creeks or streams reaching deep water, and by which access to and from said lands by water was had.    These navigable creeks and streams were completely destroyed and access to deepwater through them to and from said lands was completely shut off by the construction of said Gilmerton cut portion of said canal, and the only remaining outlet from said lands to deep water thereafter was, and is, through said Gilmerton cut; that the lands of your orators are among the lands, the proprietors of which are entitled to pass and repass free of any charge of toll or tonnage at all times through said*

*Gilmerton cut with their vessels, boats, lighters and rafts of timber, as provided in section 3 of the act last above quoted, and their lands are among the lands for the proprietors of which it is provided in said section 3 of the act last above quoted that said Gilmerton cut should be free for all vessels, boats, lighters and rafts of timber.* Your orators are advised and believe that section 3 of said act was enacted for the very reason that access to deep water from the lands abutting on said canal, among which are their lands, would be entirely destroyed by the construction of said Gilmerton cut, and that the only means of access remaining to them would be through said canal, which, it was contemplated, would forever furnish the proprietors of said lands the means of access to deep water.

"7. *That the said Gilmerton cut was completed soon after the passage of the said act of 1839,* and has ever since been maintained as a canal and as an avenue of public navigation, trade and commerce in the carriage of vessels, passengers and freight, *and has been used by your orators and others for the greater portion of that time as a means of reaching deep water from their lands, and the fact that their lands have had this deep water access through said canal has added greatly to, and does still add greatly to, the value of said lands, and the availability of the same for farming purposes, which are the only purposes to which said lands can be put, and if your orators are shut off from access to deep water through said Gilmerton cut, they will suffer great and irreparable damage, their lands will be much lessened in value, and the expense of their farming operations will be greatly increased.*

"8. That by an act of the General Assembly of Virginia passed on March 17, 1851, the Norfolk and Petersburg Railroad Company was granted a right to cross a portion of the

Gilmerton cut of said canal, and by section 6 thereof it was provided:

" '6. The said Norfolk and Petersburg Railroad shall not cross the southern branch of Elizabeth river below the mouth of the Dismal Swamp canal; and where the said road shall cross the said canal and the southern and eastern branches of the Elizabeth river shall be provided with suitable drawbridges, so as in no manner to hinder, obstruct or delay the passage of any steamboat, vessel, lighter or raft passing up or down the said canal or either of the said branches; and if any of the inconveniences herein intended to be provided against shall result from the construction of said road, the same shall be declared a nuisance, and abated as such by the circuit court of the county having jurisdiction therein.'

"9. That on the 20th day of March, 1916, an act was passed by the General Assembly of Virginia in the words and figures following, to-wit:

" '1. Be it enacted by the General Assembly of Virginia, That so much of section six of the act passed March seventeenth, eighteen hundred and fifty-one, as required the Norfolk and Petersburg Railroad Company, now a part of the Norfolk and Western Railway Company, to provide a drawbridge where its road crossed the Dismal Swamp canal, and declared that if any of the inconveniences therein intended to be provided against should result from the construction of the road, the same should be declared to be a nuisance and be abated as such, be and the same is hereby, repealed.'

"10. That the Norfolk and Western Railway Company is the successor of the Norfolk and Petersburg Railroad Company, and as such is entitled to the rights and privileges, and is subject to the obligations and liabilities of the Norfolk and Petersburg Railroad Company, and the said Nor-

folk and Petersburg Railroad Company and the Norfolk and Western Railway Company, until the present time, have maintained and operated a drawbridge over and across said Gilmerton cut, near Gilmerton, and at the point shown on the topographic sheet filed herewith as exhibit 'S.'

"11. Your orators are informed and believe, and therefore aver, that the Norfolk and Western Railway Company proposes to discontinue the use of its said drawbridge, and in lieu thereof proposes to construct a permanent fill, bridge or other obstruction in the Gilmerton cut portion of said canal near or at the place now occupied by the said drawbridge, and your orators aver that the said Norfolk and Western Railway Company and the Norfolk and Petersburg Railroad Company are now engaged in the construction of the said bridge or fill and in obstructing said Gilmerton cut portion of said canal with the same.

"12. That the construction of the said bridge or fill will interfere with the rights of your orators in the use and enjoyment of said canal and make impossible the navigation and use thereof by them with vessels, rafts, lighters, etc., and will deprive your orators of the rights conferred upon them under the laws hereinbefore quoted, and will work irreparable injury to your orators in the transportation of the products of their lands through said Gilmerton cut of said canal, and will lessen very much the value of the lands owned by your orators.

"13. That the said act of the legislature approved March 20, 1916, hereinabove quoted, in so far as it undertakes to permit the Norfolk and Western Railway Company to cross the Gilmerton cut portion of said canal by means of a permanent embankment or bridge, which obstructs the free and uninterrupted navigation and use of the said canal by your orators, is unconstitutional and is contrary to the Con-

stitution of the United States and the Constitution of the State of Virginia, because it destroys the rights of your orators in said canal and in the navigation of the same conferred on them by the acts aforesaid without due process of law and without making any compensation to them whatsoever for the destruction of said rights.

"14. That the use, maintenance and construction of the proposed bridge, fill or other obstruction across said Gilmerton cut portion of said canal, so being made by the Norfolk and Western Railway Company, will interfere with the navigation of the said canal by your orators, and with their rights to navigate the same, and your orators are informed and believe, and therefore charge, that the said obstruction will constitute a continuous trespass on their rights, which your orators are entitled to have enjoined.

"15. Your orators are advised and believe, and therefore charge, that the proposed action of the Norfolk and Western Railway Company herein will cause irreparable injury to the rights of your orators, and will constitute a deprivation of said rights, and your orators are advised that it is the province within the jurisdiction of a court of equity to restrain such action by said Norfolk and Western Railway Company and to fix and determine the rights of the parties in the premises, because by so doing it will prevent a multiplicity of suits.

"16. Your orators further show unto your honor that by an act of the General Assembly of Virginia approved March 20, 1916 (Acts of Assembly 1916, p. 559), it is provided:

" '1. Be it enacted by the General Assembly of Virginia, That the Lake Drummond Canal and Water Company be, and it is hereby, authorized to sell and dispose of, and to suspend and abandon the further operation and mainten-

ance for navigation purpose of, so much of that portion of its canal known as the Gilmerton level, extending northwardly from Deep creek, in the county of Norfolk, as it deems desirable; and that it, and its successors, shall retain and be vested with the remainder of said canal and the waters flowing therein, for such purpose as it and its successors and assigns may require.

" '2. All acts and parts of acts so far as the same are in conflict with this act, are hereby repealed.'

"And your orators are advised, informed and believe that the said *Lake Drummond Canal and Water Company have sold to the Norfolk and Western Railway Company that portion of said Gilmerton cut of said canal where the Norfolk and Western Railway Company crosses the same, and have attempted to give the Norfolk and Western Railway Company the right to cross said canal with the fill, bridge or obstruction now being erected over the same by the said Norfolk and Western Railway Company.*

"17. Your orators are advised and allege that said last quoted act of the General Assembly of Virginia is unconstitutional and void so far as it affects their rights to navigate the said Gilmerton cut portion of said canal from their lands aforesaid, and constitutes an attempt to deprive your orators of their rights therein.

"18. Your orators are advised that even if the General Assembly of Virginia could give the said Lake Drummond Canal and Water Company the right to suspend and abandon the further operation of said Gilmerton cut, it had no right to authorize them to destroy the same or to prevent the navigation of the same by your orators and others similarly situated, and the said Lake Drummond Canal and Water Company had no right under said act, even 'if it desired to suspend the operation and maintenance of said

Gilmerton cut, to authorize said Norfolk and Western Railway Company to destroy the navigation of the same by your orators by the erection of any bridge, fill or obstruction across the same.'

"In tender consideration whereof, and for as much as your orators are remediless, save in a court of equity, where matters of this kind are alone and properly cognizable, your orators pray that the said Lake Drummond Canal and Water Company, the said Norfolk and Western Railway Company and the said Norfolk and Petersburg Railroad Company be made parties defendant to this bill, and be required to answer the same, but not under oath, answer under oath being expressly waived; that your orators be granted an injunction, or restraining order, enjoining and restraining the said Norfolk and Western Railway Company and the said Norfolk and Petersburg Railroad Company and each of them, and their respective agents and employees, from constructing or installing any bridge, embankment, fill or other obstruction in said canal, or any part thereof; that proper process issue, that all proper orders be entered, reference had, and that your orators may have such other and further relief as the nature of their case may require, or as to equity may seem meet.

"And your orators will ever pray."   (Italics supplied.)

The appellees, the Norfolk and Western Railway Company and Lake Drummond Canal and Water Company, demurred to the bill and assigned in writing the following grounds of demurrer:

"1. That the bill fails to state a case entitling complainants to any relief against this defendant, for the reason that the acts done or alleged to be done by it are lawful and done under proper authority.

. "2. That the defendant, Lake Drummond Canal and Water Company, had the right to abandon its canal for purposes of passage and upon such abandonment complainants' rights therein ceased and the acts and doings of this defendant after such abandonment do not constitute damage to the complainants.

"3. That complainants' case rests solely upon the unconstitutionality of the acts of the General Assembly set out in the bill and approved March 20, 1916, whereas, such acts are within the power of the legislature and are constitutional and valid.

"4. If complainants have any rights as against this defendant, then they have a full, adequate and complete remedy at law."

The decree under review, so far as material to be stated, is as follows:

"* * * the court being of opinion that the acts of the General Assembly, in the bill mentioned, are constitutional and valid, and being of the opinion that the Lake Drummond Canal and Water Company has a right to abandon its canal and has abandoned a portion thereof for the purposes of navigation; and that complainants are not entitled to the relief sought against the Norfolk and Western Railway Company by reason of the proposed change in the construction of its line across the canal doth so decree.

"And it is adjudged, ordered and decreed that the preliminary injunction be refused, and the demurrers of the said defendants be sustained; and the complainants having stated that they do not desire to amend, it is ordered that the said bill be and the same is hereby dismissed."

The following, on a reduced scale, is the topographic sheet filed as exhibit "S" with the bill:

"S." Section of Topographic Sheet U.S. Geological Survey Virginia N. Carolina, Norfolk Triangle Showing Gilmerton Cut

*N. T. Green* and *R. H. Bagby,* for the appellants.

*Hughes, Little & Sewell, Hugh C. Davis, Theo. W. Reath* and *Lucian H. Cocke,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

[1]    It will be apparent from the reading of the bill and from reference to the section of the topographic sheet above shown, that the case is not one of an obstruction or disuse threatened to the whole of the Gilmerton cut or canal, but only of an obstruction to the continuous passage of it.    It may still be used at both ends, on either side of the obstruction caused by the railroad crossing of the canal.    But that obstruction, as is obvious, will be a serious detriment to the navigation affected and, hence, raises the same legal question of right in appellants to the use of the canal as if the whole of it were threatened to be obstructed.

It is also true that the bill alleges that the lands of appellants lie on both sides of the Gilmerton canal.    Hence, we must infer from the *locus*, as shown by said topographic sheet, as is contended for by appellees, that some of such lands may lie on the part of Deep creek which is not cut off from deep water by the canal, and, hence, such landowners may still have unobstructed access to deep water for their water craft, notwithstanding the obstruction aforesaid.    However, it is apparent from the bill that some of appellants are not so situated.    And, moreover, if they were, if they have an existing right to use the Gilmerton canal for the passage of their water craft, it is immaterial if they do have another access to deep water.    Hence, in any aspect of the case, the legal question as to whether the appellants, as owners of lands abutting on the aforesaid canal, have an existing right to the use of it by their water craft is raised by the demurrer.

As correctly stated in the petition of appellants—whether the court erred in entering the decree under review, "depends, in its last analysis, entirely on the question—

"What, if any, rights have (appellants) in the maintenance of the Gilmerton cut portion of the Dismal Swamp canal as a means of navigation from their lands abutting thereon?"

The precise question seems to be a novel one in this State and elsewhere. The general principles involved, however, are elementary, and the authorities to which we shall refer seem to leave room for but one conclusion. But before referring to the authorities, we will consider the distinctive features of the case before us and certain legal results which in principle flow therefrom.

[2]   The right claimed by appellants is not a public, but a private right, and it is a right which at one time unquestionably existed in the appellants as appurtenant to their lands abutting on the said canal. That right was to use the canal unobstructed and free of any charge of toll or tonnage for the passage of "all (appellants') vessels, boats, lighters and rafts of timber at all times when it can be safe to operate (its) lock or locks," as is expressly provided in the condition on that subject in the act of Assembly of February 9, 1839, quoted in the bill, which statute enlarged the original franchise of the canal company so as to authorize it to acquire by condemnation the right of way for, and to construct and operate such canal. The right of way itself was not granted by the Commonwealth, but was acquired by the canal company from the private owners of the land by purchase or condemnation proceedings. When such right of way was so acquired, the ownership of it was vested in the canal company in fee simple, as appears from the original charter of the company and the subsequent statute on the subject. 12 Hening's Stat. at Large, sec. 13, p. 487, and said act of February 9, 1839 (Laws 1839, c. 145). The mere right to exercise the franchise was all that was granted by the Commonwealth. The Commonwealth having no proprietary interests in the premises, it could not grant, and did not undertake to grant, any property interest, but only a franchise to the canal company. *San Francisco* v. *Water Works Co.*, 48 Cal. 493. Having acquired the ownership of the right of way in fee simple, by

purchase or condemnation, and having constructed the canal thereon, the canal company was the owner of the whole in fee simple. Thereafter only its right to operate the canal was dependent upon its right to exercise its franchise. Hence, thereafter the condition aforesaid remained imposed only on the right of exercise of the franchise.

[3] It is true, unquestionably, however, that so long as said condition remained imposed on such franchise, just so long the appellants enjoyed the right of navigation aforesaid as incident thereto, and that was a right appurtenant to the lands of the appellants because made so by the statutory condition. Hence, in so far as appellants and their predecessors in title are concerned, and as to them, the right fulfilled all of the requisites of an "affirmative easement" appurtenant to a dominant estate, as defined in the books. Washburn on Easements and Servitudes (4th ed.), pp. 7, 9, 10, 22. And the right does not lack the existence of a tenement as a servient estate. The right, in the case before us is imposed upon a franchise, it is true, but that is a tenement. 2 Minor's Inst. (3rd ed.) 5. The right under consideration may therefore be regarded as an easement; but it is attendant upon the right of exercise of the franchise aforesaid, as the servient estate; not upon the portion of land of the canal site conveyed by the canal company to the railroad company.

But if regarded as an easement and a property right, still it was such only so long as it existed.

And just here is the turning point in the case. How long did such right exist?

[4] The right in question had its source, as we have seen, in the condition imposed by the statute aforesaid— in a grant from the Commonwealth. But it was not a grant to the appellants or to their predecessors in title, nor a grant to which they were in privity. It was a mere incident to a grant to another. The contract which the grant created

was solely between the Commonwealth and the canal companies first with the original canal company and subsequently with its successor, the appellee canal company. The right in question, therefore, was not derived by the predecessors in title of the appellants, by grant from the Commonwealth to them, nor under any contract of the Commonwealth made with them.

[5] But it is claimed by appellants that, although there was on the part of the Commonwealth no grant directly to or contract directly with their predecessors in title, the condition aforesaid in the statute was in effect a contract for their benefit, and that such contract was supported in their favor by a valuable consideration, in this: That before the canal was constructed, the lands of appellants, then owned by their predecessors in title, all had access to deep water navigation; that the canal, as proposed to be and as it was constructed, would and did shut off such lands, or at least a part of them, from such navigation; that it was because of this situation that the condition aforesaid was incorporated in said statute; and that the right of use of the canal aforesaid was stipulated in the statute in lieu of said previously existing access to deep water navigation.

We may regard the position taken by appellants as sound as far as it goes. But the question would still remain— how long does such condition stipulate that such right of use of the canal shall continue to exist? Does it bind the canal company and its successors to continue to exercise the canal franchise perpetually, so that the canal must continue for all times to furnish a means of navigation to and from the lands of appellants abutting thereon? Does it prohibit the abandonment of the exercise of such franchise in whole, or in part, if attended with such result, although the abandonment may be with the consent of the Commonwealth?

The Commonwealth, as aforesaid granted to the canal

company merely the franchise aforesaid.  It left the canal company to acquire the title to the land for the canal by purchase or condemnation proceedings under the statute, as aforesaid.  It is true that it may have cost the canal company less to acquire the land for the canal from the landowners, by reason of the fact that the statute contained the condition aforesaid; but that did not make such condition a contract provision for the perpetual operation of the canal for the benefit of such landowners.  It merely provided, in effect, that if in the exercise of the franchise the canal company acquired the right of way and constructed the canal, then, so long as it should operate it under its franchise, the landowners, shut off from deep water navigation by the canal would have the right of use of it, as aforesaid.  This contemplated future *status* in the premises doubtless affected the *quantum* of damages which such landowners may have obtained for their land taken for the canal and for injury to the residue of any tract or tracts of land of which a part only was taken for such purpose. But that was the ultimate extent of the effect to which the imposition of said condition could have gone.  That was not a contract for the perpetual operation of the canal, but a stipulation merely affecting the damages to such landowners during such period as the canal might be operated.  And since, as we shall presently see, it is well settled by the authorities that a grantee of a franchise may cease to exercise it, in whole or in part, at any time, with the consent of the Commonwealth, in legal contemplation it must be regarded as having been in the minds of the parties at the time of the acquisition of the right of way for the canal, by purchase or condemnation, that the canal might not be perpetually operated; in which event, the site of the canal would not revert to its former owners, but would belong to the canal company or to its successors or assigns in fee, and so much of the remaining lands of such former owners of the

canal site as was shut off by the canal construction from the deep water navigation aforesaid would remain so shut off thereafter. And the same is true as to the result of a partial cessation of the perpetual operation of the canal, such as has occurred in the case before us. Therefore, as must be inferred, in the absence of evidence to the contrary, such contingences must have entered into the ascertainment of the compensation paid to the landowners affected when the right of way for the canal was originally acquired by the canal company, and, as we must assume, in the absence of evidence to the contrary, were taken care of by such compensation then paid.

That is to say, the stipulation aforesaid in the statute must be construed as in substance and effect a stipulation merely that such right of use of the canal should continue as long as the canal should be operated under the franchise aforesaid; but that should such operation cease in whole or in part, because the Commonwealth should consent to such cessation of operation, the right aforesaid would thereupon terminate to the extent that such right was thereby affected. And moreover, in the light of such construction of the stipulation aforesaid, any consideration furnished therefor in a diminution of damages such as above indicated, must be considered as having been intended to cover only such period as the canal might be operated under the franchise aforesaid and would in fact cover only such period. Hence, if said statutory condition be regarded as a contract for the benefit of appellants, based on valuable consideration, it is inoperative as a contract beyond the period last referred to, both because of its terms and for lack of consideration to support it. And it would be equally inoperative as a gift beyond such period, because it would not be an executed, but merely an executory, gift as to such future period.

The conclusion necessarily follows that the right afore-

said existed no longer than the will of the Commonwealth required it to exist, and that it terminated, to the extent the right was thereby affected, when the canal company, with the consent of the Commonwealth, ceased to operate that portion of the canal which was sold and conveyed to the railway company.

[6]   Since the appellants have acquired no right under said statutory condition which survives the cessation of the operation of the canal, they stand, therefore, precisely in the same position as would any owners of land on a canal owned and operated by the State or under State authority, who have used the canal for the benefit of their abutting lands without any contract right to continue to do so, and merely by acquiescence of the State or the operator of the canal.

As held by abundant authority, such a right of use of the canal terminates when and to the extent that the operation of the canal ceases with the assent of the Commonwealth. *Vought* v. *C., H. V. & A. R. R. Co.*, 58 Ohio St. 123, 50 N. E. 442, S. C., 176 U. S. 481, 44 Law Ed. 554, 20 Sup. Ct. 398; *Walsh* v. *C., H. V. & A. R. R. Co.*, 176 U. S. 469, 44 Law Ed. 549, 20 Sup. Ct. 393, and cases therein cited on the point; *Chase* v. *Sutton Mfg. Co.*, 4 Cush. (Mass.) 152; *Fredericks* v. *Penn. Canal Co.*, 109 Pa. 50, 2 Atl. 48; *Saylor* v. *Penn. Canal Co.*, 183 Pa. 167, 38 Atl. 598, 63 Am. St. Rep. 749.

As held in substance by these authorities, the question is purely one between the Commonwealth and the grantee of the canal franchise. If the Commonwealth permits the holder of the franchise to abandon the canal in whole or in part, individuals who have enjoyed its use without any contract right to continue to do so, have no right to complain. We consider such holding to be correct and are of opinion that there is nothing in the case before us to take it from under the control of the legal principles involved in such decisions.

The authorities cited and relied on by appellants of *Ladd* v. *City of Boston*, 151 Mass. 585, 24 N. E. 858, 21 Am. St. Rep. 481; 1 Lewis on Em. Domain, sec. 142; *Johnston* v. *Old Colony R. R. Co.*, 18 R. I. 642, 29 Atl. 594, 49 Am. St. Rep. 800; *Allen* v. *Detroit*, 167 Mich. 464, 133 N. W. 317, 36 L. R. A. (N. S.) 890; *Flynn* v. *New York, etc., Co.*, 218 N. Y. 140, 112 N. E. 913, Ann. Cas. 1918 B, 588, involve negative equitable easements derived by grant or other executed contract. Washburn on Easements and Servitudes (4th ed.), p. 112, *et seq.* Such rights and all other property rights acquired by grant or prescription, so long as they would otherwise exist, are protected from legislative abrogation by our State Constitution and "cannot be destroyed or impaired by public works without compensation." 1 Lewis on Em. Domain, *supra* (sec. 142). But, as aforesaid, the rights of appellants, whatever they may once have been, terminated, in accordance with the provisions of their source of title thereto, when (and to the extent they were thereby affected) the canal company, with the consent of the Commonwealth, abandoned the operation of that portion of the canal which it sold and conveyed to the railroad company.

We were requested in the oral argument before us for appellants to enter in our decree, in the event it should be adverse to the appellants, a provision to the effect that our decision is without prejudice to any remedy which the appellants may have at law, if any, against the appellees or any of them. We will grant the request; but we feel that we should say in this connection that we do not wish to be understood as intimating thereby that we are of opinion that any such remedy at law exists. We should also here say, as appears, indeed, from what we have said above, that no such remedy at law could exist because of the deprivation of the appellants of the right of use of the canal which has been above considered, unless a different case

were presented on the facts from that presented by the bill in the cause before us.

Accordingly, and for the foregoing reasons, the decree under review will be affirmed, but without prejudice to any remedy which the appellants may have at law, if any, against the appellees or any of them.

*Affirmed.*